[No. 15288.    Department Two.    August 13, 1919.]

GREAT NORTHERN RAILWAY COMPANY, *Appellant,* v.
STEVENS COUNTY, *Respondent.*[1]

COUNTIES (86)—TAXATION — LIMITATIONS — NECESSARY EXPENSES.
Under Rem. Code, § 9213, expressly limiting the levy for county cur-
rent expenses to eight mills, which is the only authority for the levy
of such a tax, a tax in excess of eight mills is invalid, and cannot
be sustained upon the theory that the same was required to meet
necessary governmental expenses.

COUNTIES (86)—POWER TO LEVY TAXES.  There is no implied power
in counties to levy taxes, but the same exists only by express
statutory authorization.

APPEAL ·(483)—DECISION—EFFECT ON STRANGERS—RELIEF TO TAX-
PAYERS AS CLASS.  In an action by a taxpayer to recover excess
county taxes paid, in which there is sought on behalf of all other
taxpayers a perpetual injunction against the expenditure of the
amount of excess taxes collected, the relief will be confined to
repayment of plaintiff's excess taxes, where no injunction was issued,
the year for which the taxes were levied has long since expired,
and there was no means of knowing the circumstances under which
the several taxpayers paid the excess levy.

Appeal from a judgment of the superior court for
Stevens county, Hill, J., entered September 25, 1918,
upon findings in favor of the defendant, dismissing an
action to recover taxes paid.  Reversed.

*F. V. Brown* and *Thomas Balmer,* for appellant.
*Osee W. Noble* and *L. B. Donley,* for respondent.

PARKER, J.—The plaintiff railway company seeks
recovery of the sum of $1,628, which it claims was
illegally exacted from it by the taxing officers of
Stevens county in March, 1918, upon its property in
that county, assessed and levied in the year 1917.  A
trial upon the merits in the superior court for that
county, sitting without a jury, resulted in judgment

[1]Reported in 183 Pac. 65.

denying to the railway company the relief prayed for; from which it has appealed to this court.

The controlling facts are not in dispute, and may be summarized as follows: In October, 1917, the board of county commissioners, at its regular session held for that purpose, voted an amount for the county current expense fund for the ensuing year to be raised by a tax upon the taxable property within the county, which called for a levy of 9.3 mills on each dollar of the assessed value of such property; and thereupon voted and made such levy of 9.3 mills. The total assessed value of the railway company's property within the county was in amount such that, had the levy been 8 mills instead of 9.3, the railway company would have been required to pay $1,628 less in taxes for that year than was exacted from it. On March 6, 1918, the taxes having become due, the railway company was compelled to pay, and did pay, to the county treasurer the full amount levied and assessed against its property, including the excess of $1,628, resulting from the excess levy of 1.3 mills, then claiming and protesting such excess levy of 1.3 mills to be illegal and made wholly without legal authority. It is to recover from the county an amount equal to this claimed excessive amount of $1,628, so exacted and paid by the railway company, that it commenced this action in the superior court for Stevens county in May, 1918.

The only express power to be found in our statutes authorizing boards of county commissioners to levy taxes for "county current expenses," is found in Rem. Code, § 9213, which reads as follows:

"For the purpose of raising a revenue for the state, county indebtedness, county current expense, school, road and other purposes, the board shall, at said October session, levy a tax on all taxable property in the county, as shown by the assessment-roll, sufficient for

such purposes': Provided, that state tax shall not exceed the amount levied by the state board of equalization; the tax for payment of county indebtedness shall not exceed five mills; the tax for payment of county current expense shall not exceed eight mills; the school tax shall not exceed eight mills, except for districts in cities of ten thousand or more inhabitants, where it shall not exceed ten mills, unless the board of directors thereof shall by unanimous consent of all its members determine upon a greater levy, not exceeding two per cent; the road tax shall not exceed five mills; the bridge tax shall not exceed three mills, and all other taxes shall be in accordance with the laws of the state.''

This section not only constitutes the only express statutory grant of power to boards of county commissioners to levy taxes for county current expenses, but it also contains an express limitation upon that grant of power, to wit: that ''the tax for payment of county current expense shall not exceed eight mills.'' It is argued by counsel for the county that the limitation in this section upon the levy for county current expenses to eight mills is subject to the exception that, in case an eight mill levy will not produce enough funds to pay the necessary current expenses of the county for the ensuing year—that is, the actual necessary expense of maintaining the several departments of the county government—the board is authorized to make a levy sufficient therefor in excess of eight mills. Counsel for the county invoke, by way of analogy, the general rule that the constitutional debt limit is not applicable to the incurring of obligations by the county in the maintaining of its necessary governmental functions; and rely upon the showing made in this case, as claimed by them, that all the items of the estimate of expense, payable out of the current expense fund, made in pursuance of Rem. Code, § 9212, are necessary ex-

penses to be incurred in the maintenance of the governmental functions of the county for the ensuing year. While the arguments of counsel on both sides of this case are directed almost wholly to the question of such necessity for the incurring of the expenses for certain of the several items specified in the estimate of current expenses for the ensuing year, we think the reason of the rule of the exception touching the constitutional debt limit of counties has no application in this controversy. As we view the law, it does not follow that, because the board of county commissioners may have in certain cases of necessity the implied power to incur obligations for current expenses of the county government beyond the constitutional debt limit, it may levy a tax in excess of the amount which this statute has prescribed and expressly limited. There are decisions of the courts which seem to hold that, ordinarily, the granting of power to the governing bodies of counties and municipalities to incur obligations of a particular character implies the power to levy taxes to provide funds for the payment of such obligations. But no decision has come to our notice which holds that an express statutory limitation upon the taxing power of such governing boards may under any circumstances be exceeded.

In the text of vol. 1 of Cooley on Taxation (3d ed.), at page 465, that learned author says:

"The fact that the state creates municipal governments does not by implication clothe them with the power to levy taxes. That power must be conferred in terms, or must result by necessary implication from the language made use of in the law. But it is not requisite that any particular technical or legal terms shall be made use of in giving the power; it is enough that the purpose is apparent, and that on a fair construction of the language employed the legislature must be deemed to have intended that the power should

exist. Where authority to contract debts is given, authority to tax for their satisfaction may be deemed given also, without express words to that effect, if such appears to be the intent of the legislature; but an implication to that effect is not a necessary one, and a person who contracts with the municipality must take notice of its power to tax, and of any limitations thereof that may exist."

This statement of the law it would seem is especially applicable to counties and their governing bodies, since counties, though legal entities, and in a sense municipal corporations, are but political subdivisions of the state, and as such are but agencies of the state, subject to legislative control. Even our constitution in § 1 of article 11, refers to counties as "legal subdivisions of this state." 7 R. C. L. 923, 936; 15 C. J. 388, 420, 632.

In the text of 15 Corpus Juris, at page 632, it is said: "A county has no inherent power to levy taxes, but the power is dependent on legislation." This view of the law is abundantly supported by the decisions of the courts there cited, among which we note the following: *Albany Bottling Co. v. Watson,* 103 Ga. 503, 30 S. E. 270; *Booth v. Opel,* 244 Ill. 317, 91 N. E. 458; *Russell County v. Hill,* 164 Ky. 360, 175 S. W. 988; *Jackson v. Board of Com'rs of Surry County,* 171 N. C. 379, 88 S. E. 521; *Obenchain v. Daggett,* 68 Ore. 374, 137 Pac. 212.

The last cited case, while recognizing the rule as stated in the above quotations from Cooley on Taxation and Corpus Juris, is of interest as showing under what circumstances the power of taxation will be implied from the power to incur debts and obligations on the part of the county, there being no express statutory limitation upon the taxing power involved in that case. Our decisions in *Meehan v. Shields,* 57

Wash. 617, 107 Pac. 835, and *State ex rel. Clausen v. Burr,* 65 Wash. 524, 118 Pac. 639, are in harmony with the law as stated in the above quotations from Cooley on Taxation and Corpus Juris. We think it is quite plain that there is nothing in our statute law which lends support to the view that a board of county commissioners has the implied authority to exceed the tax levying power prescribed and limited by the express provisions of Rem. Code, § 9213, above quoted.

When we look to our state constitution, it appears equally plain that no tax levying power is, by the terms of that document, vested in counties or county authorities; but that such power can exist only by grant from the sovereign state, which, of course, means by legislative enactment. In section 9 of article 7 of the constitution we read:

"All municipal corporations may be vested with authority to assess and collect taxes."

And in section 12 of article 11 we read:

"The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

We find no language in our state constitution coming any nearer than these provisions to granting the power of taxation to the governing bodies of counties or municipal corporations, other than cities of the first class having power to frame and adopt their own charters. It seems plain to us that this language does not grant such power, but leaves it to be granted by the legislature, attended by such conditions and lim-

itations as that body may prescribe. We conclude, therefore, that the tax levy made by the board of county commissioners for Stevens county, to the extent that it is in excess of eight mills, was made wholly without authority of law, and that the railway company is entitled to relief therefrom.

In its complaint the railway company prays in behalf of itself and all other taxpayers of the county similarly situated, and here makes contention that the county authorities "be perpetually enjoined and restrained from expending any of the amount of taxes collected or to be collected by reason of said excessive levy." In view of the fact that there was no temporary injunction issued in this case looking to the preservation of the funds in the manner prayed for; that the year 1918 for which the tax levy here involved was made, during which it became collectible and was to be expended, has long since expired; that we have, in this record, no means of knowing the circumstances under which the several taxpayers may have paid to the county treasurer the excessive levy and cannot tell what their several rights would now be with reference thereto, we think it is impractical to go farther in this case than to award the railway company judgment for the amount of illegal tax which it was compelled to pay. We therefore dispose of the case as though it were simply one on the part of the railway company seeking recovery of the amount of taxes unlawfully exacted from it, leaving other taxpayers free to enforce such rights as they may possess.

The judgment is reversed and the cause remanded to the superior court for Stevens county, with direction to enter a judgment in favor of the railway company and against the county for the amount of $1,628, with legal interest from March 6, 1918, the date on

which the railway company was compelled to and did pay the excessive and illegal tax in that sum.

HOLCOMB, C. J., BRIDGES, MOUNT, and FULLERTON, JJ., concur.