[No. 24977. Department One. April 17, 1934.]

THE STATE OF WASHINGTON, *on the Relation of School District No. 37 of Clark County, Respondent and Cross-appellant,* v. CLARK COUNTY *et al., Appellants.*[1]

[1]Reported in 31 P. (2d) 897.

*Albert M. Nanney,* for appellant.

*L. M. Burnett* and *Jos. E. Hall,* for respondent and cross-appellant.

*McMicken, Ramsey, Rupp & Schweppe* and *Patterson & Davis, amici curiae.*

MILLARD, J.—The forty mill tax limit statute (Ch. 4, Laws of 1933, p. 47, Initiative Measure No. 64) provides that

". . . the aggregate of all tax levies upon real and personal property by the state, county, school district and city or town, shall not in any year exceed forty mills on the dollar of assessed valuation, which assessed valuation shall be fifty per cent of the true and fair value of any such property in money, and the levy by the state shall not exceed five mills, *the levy by any county shall not exceed ten mills, including the levy for the county school fund,* the levy by or for any school district shall not exceed ten mills and the levy by any city or town shall not exceed fifteen mills; . . ." (Italics ours.) Rem. 1933 Sup., § 11238-1.

Under the school code, enacted in 1909, the levy for school purposes was ten dollars for each school child whether or not that child attended the public schools. The pertinent provision reads as follows:

"The county commissioners of the several counties of the state of Washington shall annually, at the time of making the tax levy for county purposes, levy a tax on all property subject to taxation in their county, sufficient to produce the sum of ten dollars for each child of school age therein, as is shown by the certificate of the county superintendent hereinafter mentioned: *Provided,* that such tax on said property shall in no case exceed five mills on each dollar, at the assessed valuation; such tax to be used for the support and maintenance of the public schools in such county." (Ch. 97, Laws of 1909, p. 322, § 5; Rem. Rev. Stat., § 4936.)

The foregoing section was amended by chapter 28, Laws of 1933, p. 171, § 12, to provide for a levy sufficient to produce five cents per day for each pupil in attendance in the common schools of the county. Those not attending school may not be counted for the purpose of obtaining school funds, as was the case under

the 1909 statute. The amended section reads as follows:

"The county commissioners of the several counties of the state of Washington shall annually at the time of making the tax levy for county purposes, levy a tax on all property subject to taxation in their county, sufficient to produce five cents per day for each pupil in attendance in the common schools of the county during the preceding school year. No district shall be reckoned as having less than two thousand five hundred days' attendance either for revenue or apportionment purposes." Rem. 1933 Sup., § 4936.

On October 2, 1933, the commissioners of Clark county met in regular session, as required by the statute (Rem. Rev. Stat., §§ 3997-3, 3997-4), for the purpose of fixing the final budget of the county for the year 1934 and making levies therefor. The estimated requirements for 1934, as disclosed by the preliminary budget submitted by the county auditor, amounted to $307,107.30. The unexpended surplus from the preceding budget was $13,584.82. The estimated miscellaneous receipts for 1934 amounted to $52,900. After crediting the total ($66,484.82) of these two items, there remained in the budget $240,622.48 to be raised by a tax levy. The amount to be raised for the county school fund, under the provisions of chapter 28, Laws of 1933, p. 171, § 12, was $71,245.64. That is, the total amount to be raised for county and school purposes was $311,868.12.

The assessed valuation of taxable property in the county is $20,809,467. The maximum amount which could be obtained by taxation for county and county school purposes under the provisions of initiative measure No. 64 (Ch. 4, Laws of 1933, p. 47; Rem. 1933 Sup., § 11238-1), "the levy by any county shall not exceed ten mills, including the levy for the county school

fund," was $208,094.67, or $103,773.45 less than the aggregate ($311,868.12) requirements of the county and the county school fund.

The county commissioners adopted a final budget in the total amount of $208,094.67, the maximum permissible under the forty mill tax limit statute. Tax levies were certified to the county assessor by the commissioners for the respective sums of $158,610.18 for the county current expense fund and $49,484.49 ($21,-761.15 less than the amount due the school fund under Ch. 28, Laws of 1933, p. 171, § 12 [Rem. 1933 Sup., § 4936]) for the county school fund.

School district No. 37 of Clark county appeared before the board of county commissioners, for the first time, seventeen days after the certification of the above-mentioned tax levies, and protested the action of the board. The school district claimed that, under chapter 28, Laws of 1933, p. 171, § 12, the commissioners had no alternative but to certify to the county assessor, for the purpose of levy, the full sum of $71,-245.64 for school purposes; or that, if not required to levy the full amount due the county school fund, the commissioners should ratably reduce the county current expense fund and the county school fund, the total of the two funds not to exceed the amount that can be raised by a ten-mill levy.

The county commissioners refused to accede to the demand of the school district, whereupon the school district commenced this action for a writ of mandate requiring the county commissioners to levy the full amount ($71,245.65) due the school fund under chapter 28, Laws of 1933, p. 171, § 12 [Rem. 1933 Sup., § 4936], and to restrain the county assessor from extending the tax rolls of the county until the board of county commissioners had made certification of the correct amount of the tax.

Wilma Smith, an indigent widow and mother of two minor children who were dependent upon her for support, intervened in the action. Alleging that she was dependent solely on a mother's pension paid to her by the county, and that the reduction of the amount of the county current expense fund (the largest single item of which was one for the payment of mothers' pensions) would cause her and others similarly situated to suffer to an unascertainable extent, the intervener prayed that the county commissioners and county assessor be required to adopt and use for tax purposes the property valuation ($25,377,400) as fixed and determined by the state board of equalization for the purpose of raising state taxes.

The cause was tried to the court, which was of the view that the prayer of the intervener should be denied; that it was equally mandatory upon the county commissioners to levy taxes for the county current expense fund and for the county school fund; that, as the amounts required for the two funds exceeded the amount which the commissioners could legally levy, the funds should be ratably reduced; that the county current expense fund should be reduced from $158,-610.18 to $143,594.78, a reduction of $15,015.40; and that the county school fund should be increased from $49,484.49 to $64,499.89, or $6,745.75 less than the amount due the school fund under chapter 28, Laws of 1933, p. 171, § 12. Judgment was entered accordingly.

None of the parties to the action was satisfied with the outcome of the trial. The respondent commissioners and assessor and the intervener appealed, and the relator school district cross-appealed, from the judgment.

The contention of appellant intervener that the property valuation upon which the taxes for county

purposes should be levied is the valuation as fixed and determined by the state board of equalization and not the valuation found by the county assessor and the board of equalization of the county, is answered by *State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619, and *State ex rel. Tacoma School District No. 10 v. Kelly,* 176 Wash. 689, 30 P. (2d) 638. In the first case cited, we held that only the local authorities have the power to list and value property within the county for local taxation purposes. In the second case cited, we said, with reference to *State ex rel. Showalter v. Cook,* 175 Wash. 364, 27 P. (2d) 1075, cited by appellant intervener:

"It was there held that the state board of equalization, in equalizing assessments and levying taxes for state purposes, is not bound by the valuations as fixed by county assessors. In other words, for *state purposes* the state board of equalization has the power to fix the assessed valuation of taxable property in the various counties at fifty per cent of the true and fair value of such property. It does not follow, however, that this valuation may be used as a basis for levy of taxes for local purposes. On the contrary, it cannot be, in view of article XI, § 12, of the constitution, which provides:

" 'The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.' "

It is unnecessary, in view of our disposition of the question raised by the cross-appeal of the school district, to discuss other questions urged herein.

Counsel for the school district contend that the duty imposed upon the county commissioners by chapter 28, Laws of 1933, p. 171, § 12, is positive, not discre-

tionary, hence the school district was entitled to a writ of mandamus to compel performance of that duty.

The statute (Ch. 28, Laws of 1933, p. 171, § 12) requiring the county commissioners to levy a tax sufficient to produce five cents per day for each pupil in attendance in the common schools of the county is a mandatory law; therefore the county commissioners are without discretionary power to reduce the amount of the school fund which has been authorized thereby. To hold otherwise, would authorize a *pro tanto* nullification by the county commissioners of a mandatory statute; and logically it would follow that the county commissioners would have the legal right to disregard the law in its entirety, and to refuse to levy any tax whatever for school purposes.

The legislature is required by the constitution to establish an efficient system of public schools. It is the paramount duty of the state to make *ample* provision for the education of the children of the state.

"It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex." State Constitution, Art. IX, § 1.

"The legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. But the entire revenue derived from the common school fund, and the state tax for common schools, shall be exclusively applied to the support of the common schools." State Constitution, Art. IX, § 2.

Mindful of its "paramount duty" to make provision for the education of the children of the state, and confronted by the forty mill tax limit statute (Ch. 4, Laws

of 1933, p. 47, Initiative Measure No. 64 [Rem. 1933 Sup., § 11238-1]), which provided that "the levy by any county shall not exceed ten mills, including the levy for the county school fund," the legislature amended the school code of 1909, which provided for a levy of ten dollars for each school child. By the amendatory act (Ch. 28, Laws of 1933, p. 171, § 12 [Rem. 1933 Sup., § 4936]), which is an inflexible legislative command, the legislature required the county commissioners to levy a tax which would produce five cents per day for each pupil in attendance in the common schools of the county. In the case of Clark county, this operated to reduce the levy from ten dollars to nine dollars per school child, and the full levy for the school fund would require about three and one-half mills. There would remain for county current expenses six and one-half mills.

██ Our constitution does not vest tax-levying power in counties or county authorities.

"Such power can exist only by grant from the sovereign state, which, of course, means by legislative enactment." *Great Northern R. Co. v. Stevens County,* 108 Wash. 238, 183 Pac. 65.

Section 9, Art. VII, and § 12, Art. XI, of the state constitution, providing that the power to assess and collect taxes may be vested in the corporate authorities of all municipal corporations, do not grant such power, "but leaves it to be granted by the legislature, attended by such conditions and limitations as that body may prescribe." *Great Northern R. Co. v. Stevens County,* 108 Wash. 238, 183 Pac. 65.

We repeat, county authorities must have express authority, either under the constitution or an act of the legislature, to levy taxes. They have no right to levy taxes for county purposes at a rate exceeding

the limitation fixed by either the constitution or act of the legislature.

By express statutory grant, the county commissioners are empowered to levy taxes for county current expenses and for county school purposes. Rem. Rev. Stat., § 11238. By initiative measure No. 64, chapter 4, Laws of 1933, p. 47, Rem. 1933 Sup., § 11238-1, the grant of power is limited to ten mills for payment of county current expense, "including the levy for the county school fund." The power has been granted and the rate of levy fixed. Recognizing the limitation of ten mills for county current expenses and for the county school fund (an initiative measure which could not be amended or repealed by the legislature within two years following its enactment), the legislature enacted, as it has the undoubted right to do, a specific rule for the allocation of three and one-half tenths of the levy for the common schools and six and one-half tenths of the levy for the county current expense fund.

The estimate upon which the levy for county current expenses was made includes a considerable amount (fifty-seven thousand dollars) for care of the indigent. It was the view of the trial court that a levy for that and other items of the total required for the county current expense fund was mandatory. We agree with counsel for cross-appellant that the question of mandatory levies must be distinguished from mandatory expenditures. It can not be successfully contended that there could be no limit to the levy when governmental functions required. We said in *Great Northern R. Co. v. Stevens County,* 108 Wash. 238, 183 Pac. 65,

"As we view the law, it does not follow that, because the board of county commissioners may have in certain cases of necessity the implied power to incur obligations for current expenses of the county government

beyond the constitutional debt limit, it may levy a tax in excess of the amount which this statute has prescribed and expressly limited. There are decisions of the courts which seem to hold that, ordinarily, the granting of power to the governing bodies of counties and municipalities to incur obligations of a particular character implies the power to levy taxes to provide funds for the payment of such obligations. But no decision has come to our notice which holds that an express statutory limitation upon the taxing power of such governing boards may under any circumstances be exceeded.''

It does not follow that, because the county authorities may at some time be required to make larger expenditures for the support of the indigent than they can levy, even to the extent of exceeding the constitutional debt limit, *Rummens v. Evans,* 168 Wash. 527, 13 P. (2d) 26, *Kruesel v. Collin,* 171 Wash. 200, 17 P. (2d) 854, they may create a special fund to meet anticipated needs of this kind. As we said in *Palmquist v. Taylor, ante* p. 306:

''It appears here that the county anticipated that some further amount would be required in the course of a year for indigent relief, and that under the mandatory duty of the county to care for the indigent, as determined in *Rummens v. Evans,* 168 Wash. 527, 13 P. (2d) 26, and *Kruesel v. Collin,* 171 Wash. 200, 17 P. (2d) 854, the county had the right and power to make the levy now as a special fund for such anticipated future needs. The doctrine of necessity under the law and cases cited does not go to the extent of authorizing a special fund to meet anticipated needs of this kind, but that the mandatory duty of the county to care for the indigent will not be defeated by the terms of any constitutional debt limit in those cases where, as in *Rummens v. Evans,* 168 Wash. 527, 13 P. (2d) 26, the county commissioners found and declared an immediate emergency for such an appropriation. The necessity for indigent relief varies, of course, from time to time, and, as argued on behalf of the taxpayers here, it

is known that the unemployed are now becoming appreciably less. Care and support of this kind should be provided for as ascertained immediate emergencies arise rather than according to anticipated requirements over a long period of time. The judgment of the court with respect to this item is correct.''

It may be aptly said in the case at bar, as observed by the supreme court of Oregon in *School District No. 24 v. Smith,* 97 Ore. 1, 191 Pac. 506, using the term "commissioners" in lieu of the word "court":

"The legal effect of what the County Court did was *pro tanto* to nullify a mandatory act of the legislature through the exercise of discretionary power vested in it by other legislative acts. Authority to levy taxes is primarily vested in the legislature, and it cannot be presumed that it was ever the intent of that body to delegate that power to another or inferior board in such a manner as to defeat or impair its original right. If the County Court has a discretionary power to reduce the amount of the school fund which has been authorized by a mandatory law of the legislature, it must follow that it would have the legal right to ignore the law *in toto* and to refuse to levy any tax whatever for school purposes. Within the constitutional limitation it would have the authority to take all money which the legislature intended for school purposes, and divert it to other uses within its discretion. That is not the law. We hold that as to the constitutional limitation the power of the County Court to levy a discretionary tax is subordinate to its mandatory duty to levy a tax under a specific act of the legislature.''

The judgment is reversed as to cross-appellant school district, and the cause remanded with direction to the trial court to require the county commissioners to levy the full amount of the school tax.

BEALS, C. J., MITCHELL, MAIN, and STEINERT, JJ., concur.