[No. 25576. *En Banc.* April 11, 1935.]

HENRY K. LOVE, *Respondent*, v. KING COUNTY *et al., Appellants*, LAURENCE S. BOOTH, *Intervener-respondent.*[1]

*Warren G. Magnuson* and *Edwin C. Ewing,* for appellants.

*Bruce C. Shorts, C. H. Hartson,* and *Bruce Shorts, Jr.,* for respondent.

*McMicken, Ramsey, Rupp & Schweppe,* for intervener.

STEINERT, J.—This is an action by a taxpayer to enjoin a county and certain of its officers from issuing

[1]Reported in 44 P. (2d) 175.

and delivering a series of indigent relief bonds. A second taxpayer intervened in the action and by his complaint asked the same relief. Demurrers to the complaints having been overruled and the defendants having elected to stand thereon, the court entered judgment enjoining the issuance of the bonds. The defendants have appealed.

The material facts alleged in the complaints and admitted by the demurrers are these: At an election held November 8, 1932, the qualified voters of King county, by requisite vote, authorized the issuance of general negotiable serial coupon bonds in the total principal sum of two million dollars, to provide funds for the relief of the poor, indigent and infirm residents of the county. Bonds totaling one million six hundred and fifty thousand dollars in amount were issued and sold prior to December 6, 1934. At the general election held November 6, 1934, the people of the state adopted initiative measure No. 94, and the same became effective December 6, 1934.

That act provides, in part, as follows:

"Except as hereinafter provided, the aggregate of all tax levies upon real and personal property by the state, county, school district, road district, and city or town shall not in any year exceed forty mills on the dollar of assessed valuation, which assessed valuation shall be fifty per cent of the true and fair value of any such property in money; and the levy by the state shall not exceed two mills to be exclusively for the support of the University of Washington, Washington State College and the Normal Schools of the state; the levy by any county shall not exceed ten mills including the levy for the county school fund, the levy by or for any school district shall not exceed ten mills, the levy for any road district shall not exceed three mills, and the levy by any city or town shall not exceed fifteen mills: . . . *Provided, further,* That the limitations imposed by this section shall not prevent the levy of additional taxes, not in excess of five mills per annum and

without anticipation of delinquencies in payment of taxes, in an amount equal to the interest and principal payable in the next succeeding year on general obligation bonds, outstanding at the time of the taking effect of this act, issued by or through the agency of the state, or any county, city, town, or school district, nor the levy of additional taxes to pay interest on or toward the reduction, at the rate provided by statute, of the principal of county, city, town, or school district warrants outstanding on December 8, 1932; but the millage limitation of this proviso with respect to general obligation bonds shall not apply to any taxing district in which a larger levy is necessary in order to prevent the impairment of the obligation of contracts: *Provided, further,* That any county, school district, road district, city or town shall have the power to levy taxes at a rate in excess of the rate specified in this act, when authorized so to do by the electors of such county, school district, road district, city or town by a three-fifths majority of those voting on the proposition at a special election, to be held in the year in which the levy is made, and not oftener than once in such year, in the manner provided by law for holding general elections, at such time as may be fixed by the body authorized to call the same, . . ." Chapter 2, Laws of 1935, p. 8 [Rem. 1935 Sup., § 11238-1a].

Thereafter, on December 17, 1934, the board of county commissioners called for bids on the remaining three hundred and fifty thousand dollars of authorized bonds, the same to be dated January 1, 1935, and to mature annually, in numerical order, on and after January 1, 1937. A syndicate of bond houses and banks submitted a bid for the bonds, subject to certain terms and conditions hereinafter to be noted. Following receipt of the bid, the commissioners adopted resolution No. 5503, authorizing the issuance of the bonds in prescribed form and specifically providing that for the punctual payment of the bonds, principal and interest, there should be levied annually on all the taxable property within King county a direct tax, *without*

*restriction or limitation as to the rate or amount thereof.* The resolution contained the further provision that the county thereby irrevocably bound and obligated itself to make such annual tax levies without restriction or limitation as to rate or amount. These provisions were incorporated into the resolution to meet the conditions, referred to above, which had been imposed by the bidders.

No levy has ever been authorized by the electors of King county for the payment of any part of these bonds, and at the time of the commencement of this action the bonds had not been issued or sold.

The court in its judgment permanently enjoined the county from issuing all or any part of the bonds under resolution No. 5503, or, so long as initiative measure No. 94 remained in force and effect, under any other resolution which bound or obligated, or purported to bind or obligate, the county to levy taxes without restriction or limitation as to rate or amount thereof for the purpose of paying the principal and interest of such bonds. All the assignments of error are based upon these provisions of the judgment.

Preliminary to a statement of the specific issue presented in this case, we shall briefly refer to two principles of law that have been definitely established, the acceptance and certainty of which may be said to be the basis upon which the county proceeded in its attempt to issue these particular bonds. There is no dispute here concerning those principles. They are: (1) Constitutional limitations upon municipal indebtedness prescribed by Art. VIII, § 6, of the state constitution, do not include those necessary expenditures made mandatory in the constitution and provided for by the legislature and imposed upon the municipality, or which are necessary in order to perform a governmental duty or to maintain the cor-

porate existence of the municipality. *Rauch v. Chapman*, 16 Wash. 568, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407; *Duryee v. Friars*, 18 Wash. 55, 50 Pac. 583; *Farquharson v. Yeargin*, 24 Wash. 549, 64 Pac. 717; *Hull v. Ames*, 26 Wash. 272, 66 Pac. 391, 90 Am. St. 743; *Gladwin v. Ames*, 30 Wash. 608, 71 Pac. 189; *Pilling v. Everett*, 67 Wash. 109, 120 Pac. 873; *Patterson v. Edmonds*, 72 Wash. 88, 129 Pac. 895; *State ex rel. Taro v. Everett*, 101 Wash. 561, 172 Pac. 752; *McCarthy v. Kelso*, 129 Wash. 121, 223 Pac. 151; *State ex rel. Porter v. Superior Court*, 145 Wash. 551, 261 Pac. 90; *Weisfield v. Seattle*, 180 Wash. 288, 40 P. (2d).149; (2) it is the duty of the county to provide for poor persons therein who are in need of assistance, and the discharge of such duty is a governmental function. *Rummens v. Evans*, 168 Wash. 527, 13 P. (2d) 26. See, also, *Kruesel v. Collin*, 170 Wash. 233, 16 P. (2d) 442; *State ex rel. Hamilton v. Martin*, 173 Wash. 249, 23 P. (2d) 1; *State ex rel. McDonald v. Stevenson*, 176 Wash. 355, 29 P. (2d) 400.

We come now to the single question involved in this case, which is this: Is it within the power of the legislature to enact statutes, or of the people effectively to adopt initiative measures, which restrict or limit the amount of taxes that may be levied annually for the payment of bonds subsequently issued by the county? It is the contention of the appellants that the power of taxation, as an attribute of sovereignty, can not be so restricted when such power is sought to be employed to meet obligations incurred in the correlative exercise of a paramount governmental function involving the right of self-preservation. We shall assume, for the purpose of the argument, that the exigency facing the county meets the hypothesis contained in appellant's contention.

It will be discerned that the theorem advanced by

appellants postulates a power to tax without any limitation whatever. It is conceded by respondents that, under Rem. Rev. Stat., § 5583-1 — 5583-7 [P. C. § 5470-11 — 5475-7], such power would exist, for the purpose of paying the principal and interest of the county's general obligation bonds, were it not for initiative measure No. 94 [Rem. 1935 Sup., § 11238-1a].

We need not spend any time in discussing the elemental proposition that the power of taxation is an essential and inherent attribute of sovereignty and belongs to, and is possessed by, the government as a matter of right without being expressly conferred by the people. 1 Cooley on Taxation (4th Ed.) § 57, pp. 149, 150. The question with which we are now concerned is whether the people constituting the body politic of a state have the right to say, and the power to compel their assertion, that the taxes which may thereafter be levied by the county shall be limited or restricted, either in rate or in amount. We have no hesitancy in answering that question in the affirmative, both upon principle and upon the authority of settled precedent. Under our form of government, ultimate sovereignty, so far as the state is concerned, rests in its people, and so long as the government established by them exists, that sovereignty remains with them, except in so far as they have expressly surrendered it to a higher sovereignty.

"All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights." Const. Art. I, § 1.

State government has the inherent power to tax, and since taxation is a legislative process, the power to tax necessarily falls within the legislative branch of government, and in that branch rests absolute discretion, subject only to constitutional and inherent lim-

itations. Under such limitations, the legislative branch has the power to determine the amount or the rate of a tax, and also the power to limit the amount or rate of taxation by a county, town, municipality or other local subdivision. 1 Cooley on Taxation (4th Ed.), § 69, pp. 171-176; § 162, pp. 358-360; § 165, pp. 361-363; 15 C. J. 632.

It is a legal tenet, universally accepted, that the power of a county or other municipal corporation to tax is not an inherent, but a delegated, power. 1 Cooley on Taxation (4th Ed.) §§ 119, 122, pp. 264, 276. It can exist only by grant from the sovereign state. In *Great Northern R. Co. v. Stevens County,* 108 Wash. 238, 183 Pac. 65, we said:

"As we view the law, it does not follow that, because the board of county commissioners may have in certain cases of necessity the implied power to incur obligations for current expenses of the county government beyond the constitutional debt limit, it may levy a tax in excess of the amount which this statute has prescribed and expressly limited. There are decisions of the courts which seem to hold that, ordinarily, the granting of power to the governing bodies of counties and municipalities to incur obligations of a particular character implies the power to levy taxes to provide funds for the payment of such obligations. But no decision has come to our notice which holds that an express statutory limitation upon the taxing power of such governing boards may under any circumstances be exceeded. . . . We think it is quite plain that there is nothing in our statute law which lends support to the view that a board of county commissioners has the implied authority to exceed the tax levying power prescribed and limited by the express provisions of Rem. Code, § 9213, above quoted.

"When we look to our state constitution, it appears equally plain that no tax levying power is, by the terms of that document, vested in counties or county authorities; but that such power can exist only by

grant from the sovereign state, which, of course, means by legislative enactment."

In *State ex rel. School Dist. No. 37 v. Clark County,* 177 Wash. 314, 31 P. (2d) 897, which was decided after initiative measure No. 64 was enacted, we said:

"We repeat, county authorities must have express authority, either under the constitution or an act of the legislature, to levy taxes. They have no right to levy taxes for county purposes at a rate exceeding the limitation fixed by either the constitution or act of the legislature."

In this case, we have, instead of statute, an initiative measure limiting the taxing power. That, however, can make no difference, for the latter is as much a legislative act as is the former. By Art. II, § 1, Amendment 7 to the state constitution, it is provided that the legislative authority of the state shall be vested in the legislature, with an express reservation in the people of the power to propose bills and laws and to enact or reject the same at the polls. The first power so reserved is the initiative. The passage of an initiative measure as a law is the exercise of the same power of sovereignty as that exercised by the legislature in the passage of a statute. *State v. Paul,* 87 Wash. 83, 151 Pac. 114; *State ex rel. Miller v. Hinkle,* 156 Wash. 289, 286 Pac. 839.

The immediate point now under discussion has been squarely met and determined in several decisions still fresh in the minds of all who are interested or concerned in questions pertaining to the reduction of taxes. *Denny v. Wooster,* 175 Wash. 272, 27 P. (2d) 328; *Palmquist v. Taylor,* 177 Wash. 306, 31 P. (2d) 894; *State ex rel. School Dist. v. Clark County,* 177 Wash. 314, 31 P. (2d) 897; *Walker v. Wiley,* 177 Wash. 483, 32 P. (2d) 1062. At the time that those cases were decided, initiative measure No. 64 was the bone of con-

tention. Initiative measure No. 94, with which we are here concerned, is but an extension upon the former measure.

In the *Denny* case, which held initiative measure No. 64 to be controlling upon the limit of the power to tax, we said:

"Clearly, however, that provision of the law as to the limit to tax [Rem. Rev. Stat., § 11238] is no longer in effect. The law upon that subject now is the forty mill tax levy law, which appears to be complete when construed according to the general rule with reference to all its parts. . . .

"The central thought or theory of this act [Initiative Measure No. 64, Rem. 1933 Sup., § 11238-1] was to start anew with a tax limit for the future of forty mills, consisting of not to exceed five mills for the state, not to exceed ten mills for the county, not to exceed ten mills for any school district, and not to exceed fifteen mills for any city or town; and, cognizant of outstanding indebtedness of the different taxing districts, it is declared in the further or second proviso, not that the general limitations imposed should take care of outstanding indebtedness, but that the general limitations imposed by the section *should not prevent* the levy of additional taxes for two specified purposes:

. . .

"Manifestly, the purposes and clear import of the act were and are to limit the amount of taxes to be levied in the future on real and personal property; to bring about necessary reductions in the cost of government; and to negative any thought whatever of repudiating present indebtedness represented by outstanding bonds and warrants."

So, here, the manifest purpose and clear intent of initiative measure No. 94 were and are to limit the amount of taxes to be levied in the future on real and personal property; to bring about necessary reductions in the cost of government; and to negative any thought whatever of repudiating any present indebted-

ness represented by general obligation bonds outstanding on the effective date of the act, or by county, city, town, or school district warrants outstanding on December 8, 1932. As already indicated, the bonds here in question have never been issued, and therefore are not outstanding.

Appellants admit that the cases just cited are decisive of the question, but they very strenuously contend that they were erroneously decided and should now be overruled. They further assert that the people have no right to restrict, curtail or abrogate the power to tax, in any degree whatever. The conclusions reached by us in these recent decisions were arrived at after mature consideration, and they reflect the deliberate judgment of this court. We are not at all disposed to overrule them. We are also satisfied that the people have the right, through initiative, to restrict and limit the taxing power of the county. By the passage of the measure, they have not ''suspended, surrendered or contracted away'' the power of taxation. To the contrary, they have exercised that power through legislation. Whether the people, in the same manner, could restrict the power of the legislature to tax is not involved in this case, and we express no opinion thereon.

Our conclusion is that the county has no power to levy taxes beyond the limits prescribed by initiative measure No. 94.

The judgment is affirmed.

ALL CONCUR.