[No. 25917. Department One. October 18, 1935.]

PAUL NEWMAN, *as Treasurer of Pierce County, et al.,*
*Respondents,* v. JOHN SCHLARB *et al., Appellants.*[1]

[1]Reported in 50 P. (2d) 36.

148

*Leo Teats* and *Ralph Teats,* for appellants Schlarb *et al.*

*The Attorney General* and *W. A. Toner, Assistant,* for appellant state board of education.

*Harry H. Johnston, John E. Belcher,* and *H. W. Covalt,* for respondents.

*John B. Shorett, Robert S. Macfarlane, Frank S. Bayley, L. M. Burnett,* and *Jos. E. Hall, amici curiae* on behalf of appellants.

*Warren G. Magnuson, Wm. Hickman Moore,* and *Edwin C. Ewing, amici curiae* on behalf of respondents.

STEINERT, J.—This action was brought by eight elective officers of Pierce county against the county commissioners of that county to compel the latter to eliminate from their preliminary annual budget any estimate for school purposes for the year 1936. An order was issued by the court temporarily restraining the commissioners from adopting and publishing the proposed preliminary budget and directing them to show cause why the order should not be made permanent.

The state board of education, the superintendent of schools of Pierce county, and two school districts of Pierce county, intervened, aligning themselves with the defendant county commissioners. The defendants and the interveners interposed separate demurrers to the affidavit which formed the basis of plaintiffs' complaint. After argument thereon, the demurrers were overruled, and, the demurrants electing to stand on their demurrers and refusing to plead further, the court entered judgment enjoining the county commissioners from making any levy for school purposes. The judgment was predicated on the sole ground that the statute under which it was proposed to make such levy was unconstitutional.

From this judgment, the defendants and interveners have appealed. Upon the appeal, we have, in addition to the briefs of the litigant parties, the brief of the prosecuting attorney of King county and his deputies, as *amici curiae,* espousing the cause of respondents, and the briefs of attorneys representing the Association of First Class School Districts of Washington, who, as *amici curiae,* align themselves with the appellants.

The statute which is now under attack by respondents, and which the trial court held to be unconsti-

tutional, is chapter 28, Laws of 1933, p. 171, § 12, Rem. 1935 Sup., § 4936, which reads as follows:

"The county commissioners of the several counties of the state of Washington shall annually at the time of making the tax levy for county purposes, levy a tax on all property subject to taxation in their county, sufficient to produce five cents per day for each pupil in attendance in the common schools of the county during the preceding school year. No district shall be reckoned as having less than two thousand five hundred days' attendance either for revenue or apportionment purposes."

That section is but an amendment of Rem. Rev. Stat., § 4936 [P. C. § 5105], which is a part of the school code adopted in 1909, and which originally fixed the amount to be raised by the county for school purposes at ten dollars for each child of school age therein; provided, however, that such tax should in no case exceed five mills on each dollar at the assessed valuation.

The position of the respondents with respect to the necessity for, and the purpose of, this action, and the theory upon which they proceed, is clearly and forcefully stated in the brief of *amici curiae* supporting respondents, as follows:

"By reason of the constrictions upon the taxing power of the counties of the state of Washington—imposed first by Initiative Measure 64, which became effective December 8, 1932, L. 33, Ch. 4, R. R. S. 1933 Sup. § 11238-1, and later by Initiative Measure 94, which became effective December 3, 1934, L. 35, Ch. 2, R. R. S. 1935 Sup. § 11238-1,—it has become impossible for the counties to meet by taxation the obligations placed upon them by various constitutional, legislative, and judicial mandates, within the limitations imposed by the initiative measures. And it has come to the place where the respective priorities of the various governmental offices, departments, services, institutions, and agencies asserting claims to

various proportions of the funds raised by taxation in the counties must be determined, and for the purpose of making such determination recourse now must be had to the basic constitutional provisions imposing their various duties and obligations.''

The position of the appellants is likewise forcefully expressed in the brief of *amici curiae* who appear on behalf of the school district, as follows:

''The fact that the electors of the state may jockey themselves into an embarrassing and even an impossible situation financially, while it may present to the court certain vexatious questions of one sort or another, does not impose upon this court the necessity, or clothe it with power to rewrite legislation for the benefit of the embarrassed voters. This court is bound by the constitution and legislation as it finds it upon the books, and new legislation is the only method by which those who vote for these measures, either directly or through their legislators, can find relief.''

Proceeding from either viewpoint, as thus reciprocally expressed, it is apparent that what this court is now asked by the respondents to do, is to arrest the course and effect of successive acts of legislation, as heretofore interpreted by this court, and to prevent an otherwise inexorable conclusion and result, by declaring an intermediate act of the legislature, namely, Rem. 1935 Sup., § 4936, unconstitutional.

The attack upon the statute is double-fronted, and in the alternative, according to whether the levy therein prescribed is for a *county* purpose or for a *state* purpose. If the levy be considered to be for a county purpose, then it is contended that the statute violates Art. XI, § 12, of the state constitution, which provides that the legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the residents or property thereof, for county, city, town or other

municipal purposes. If, on the other hand, the levy be considered as being for a state purpose, then it is contended that it violates the uniformity clause of the fourteenth amendment of the state constitution and also that provision of initiative measure 94 which limits the *state* levy to two mills on the dollar of assessed valuation. It, therefore, becomes necessary at the outset to determine the nature of the purpose for which the levy is to be made.

Sections 1 and 2, Art. IX, of the state constitution provide as follows:

"Sec. 1. It is the paramount duty of the state to make *ample provision for the education of all children residing within its borders,* without distinction or preference on account of race, color, caste or sex."

"Sec. 2. The legislature shall provide for a *general and uniform system of public schools.* The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. But the entire revenue derived from the common school fund, and the state tax for common schools, shall be exclusively applied to the support of the common schools." (Italics ours.)

Thus, at the very inception of our state government, the framers of the constitution recognized what all the states of the Union have recognized, namely, that the promotion of the general intelligence of the people constituting the body politic is the most effective way of increasing the usefulness and efficiency of its citizens, upon which the safety and welfare of the government depends. 24 R. C. L. 588.

Pursuant to the constitutional mandate, the state legislature at its first session established a general uniform system of common schools to be administered by state, county, and school district officers. Laws of 1889-90, chapter 12, p. 348, §§ 1 and 2. The same provisions appear in the present school code adopted

in 1909. Rem. Rev. Stat., §§ 4518, 4519 [P. C. §§ 4720, 4721].

Our decisions have uniformly recognized that, by the declared policy of the state, the duty of educating the children within its borders is fundamental.

"Our constitution seems to have added to the proper and essential functions of free government the maintenance of public schools." *Rauch v. Chapman,* 16 Wash. 568, 576, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407.

"An ample provision for the education of children was made paramount, and the duty was imposed upon the legislature of providing a general and uniform system of public schools." *School District v. Bryan,* 51 Wash. 498, 502, 99 Pac. 28, 20 L. R. A. (N. S.) 1033.

"The legislature is required by the constitution to establish an efficient system of public schools. It is the paramount duty of the state to make *ample* provision for the education of the children of the state." *State ex rel. School District No. 37 v. Clark County,* 177 Wash. 314, 31 P. (2d) 897.

It is apparent that the legislature, acting in pursuance of the constitutional mandate, saw fit to establish a system which, because of its ramifications, was to be administered through the cooperation of state, county, and school district officers. It needs no argument to prove that the system must of necessity be operated and conducted in that way. The state, being engaged in the exercise of a paramount duty, could, of course, select any method that it saw fit in order to discharge that duty. Consequently, it reserved to the proper state officers the general supervision of the system and entrusted to its various political subdivisions certain functions and details in which they were particularly interested and concerned.

"Public schools are usually defined as schools established under the laws of the state, usually regulated

in matters of detail by the local authorities in the various districts, towns, or counties, and maintained at the public expense by taxation, and open without charge to the children of all the residents of the town or other district." *Litchman v. Shannon,* 90 Wash. 186, 155 Pac. 783.

The establishment and maintenance of public schools throughout the state is primarily and essentially a *state* purpose, from which local and special benefits are expected to, and do, flow to the counties and the various municipalities of the state. In the performance of such general duties and purposes, the state calls upon and utilizes its constituent political agencies and for such purposes confers such powers and imposes such duties upon them as it deems necessary. These local subdivisions are created by the sovereign power of the state and under its paramount authority, with the view, not only of having them administer their own local and internal affairs, but also of having them carry out the policies of the state at large and assist in the accomplishment of the general purposes of the state.

Consequently, the state, through the legislature, may not only require such subdivisions to levy taxes for public purposes, but may also fix the amount to be levied by them, provided that such purposes, though of a general nature and for the benefit of the whole people, result in special benefits to the particular subdivision. *State ex rel. Board of Commissioners v. Clausen,* 95 Wash. 214, 163 Pac. 744; *State v. Pierce County,* 132 Wash. 155, 231 Pac. 801, 46 A. L. R. 594; *Spokane County v. Certain Lots in City of Spokane,* 156 Wash. 393, 287 Pac. 675; *Associated Schools v. School District No. 83,* 122 Minn. 254, 142 N. W. 325, 47 L. R. A. (N. S.) 200.

We hold, therefore, that the purpose of education

is not merely a county purpose, but rather a state purpose, with local benefits to the county, meeting both state and local needs. The statute, Rem. 1935 Sup., § 4936, does not impose a tax upon the county for county purposes, but for state purposes. Hence, the statute does not violate Art. XI, § 12, of the state constitution.

■ It is next contended by respondents that the statute, Rem. 1935 Sup., § 4936, violates that part of the fourteenth amendment of the state constitution which provides:

"All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only."

The argument proceeds upon the statement that, although the five cents per pupil per day amounts, on an average, to approximately three and one-half mills throughout the state generally, yet as a matter of fact, as shown by the records of the state board of education, there is a wide discrepancy in the results obtained in the various counties, the range being from as low as .915 mills to 5.017 mills. This, the respondents contend, is not the uniformity required by the constitution.

A sufficiently conclusive answer to this contention is found in the very wording of the provision of the constitution above quoted. The requirement is that the taxes shall be uniform *within the territorial limits of the authority levying the tax.* The *county,* not the *state,* makes the levy. The state is concerned only with the amount to be produced, not with the manner in which the levies operate between the counties. Within the territorial limits of the county itself, the levy operates uniformly.

■ But the answer to respondents' contention is

one of larger proportions and broader effect. The legislative authority over counties is unlimited, except as the limitation is found in the constitution, and the power of taxation, which is an incident of sovereignty, is a legislative power to be exercised upon considerations of policy, necessity, and public welfare. Accordingly, the legislature may impose upon a county the full burden of indebtedness for a purpose which, though of a general nature and for the benefit of the whole people, combines with such purpose others that are essentially of special benefit to the county. These observations are taken almost literally from the opinion in the case of *State ex rel. Board of Commissioners v. Clausen,* 95 Wash. 214, 163 Pac. 744, cited above, wherein the cases involving these principles are fully discussed.

In the case at bar, the state was concerned in having, and elected to require that, each of the various counties contribute to the cause of education an amount equal to five cents per pupil in attendance in the common schools of the county during the preceding school year. That is all that is required of any county, and the amount so fixed represents at least the local benefits that the respective counties obtain. The statute does not violate the fourteenth amendment of our constitution.

Respondents further contend that the statute, Rem. 1935 Sup., § 4936, violates the provisions of initiative measure No. 94. That measure, insofar as it is material here, reads as follows:

"Except as hereinafter provided, the aggregate of all tax levies upon real and personal property by the state, county, school district, road district, and city or town shall not in any year exceed forty mills on the dollar of assessed valuation, which assessed valuation shall be fifty per cent of the true and fair value of any such property in money; and the levy by the state shall

not exceed two mills to be exclusively for the support of the University of Washington, Washington State College and the Normal Schools of the state; the levy by any county shall not exceed ten mills *including the levy for the county school fund,* the levy by or for any school district shall not exceed ten mills, the levy for any road district shall not exceed three mills, and the levy for any city or town shall not exceed fifteen mills.'' (Italics ours.) Laws of 1935, p. 8, § 1, Rem. 1935 Sup., § 11238-1a.

· The argument of respondents is that the tax sought to be levied is a *state* tax; and that, being such, it violates initiative measure No. 94, in that it enlarges the state levy for education over the two-mill limit prescribed therein. In passing, it may be observed that, under respondents' contention, the common schools would get nothing from taxes levied upon real and personal property; because, under initiative measure No. 94, the whole amount of such tax is to be used exclusively for the support of the two universities and the normal schools of the state. This result alone would be sufficient to challenge the soundness of the contention, but its weakness is further and fully disclosed by a consideration of the legislation that preceded the adoption of initiative measure No. 94.

At the general election held November 8, 1932, the people passed initiative measure No. 64, which became effective by proclamation signed by the governor on December 8, 1932. Laws of 1933, p. 47, Rem. 1933 Sup., § 11238-1. That measure contained the identical language appearing in the subsequent initiative measure No. 94, above quoted, except that in the earlier measure the state levy was limited to five mills instead of two. Subsequently, the legislature enacted chapter 28, Laws of 1933, p. 171, § 12, Rem. 1933 Sup., § 4936 (now Rem. 1935 Sup., § 4936).

Thereafter on April 17, 1934, this court rendered its

decision in the case of *State ex rel. School District No:
37 v. Clark County,* 177 Wash. 314, 31 P. (2d) 897,
wherein it was held that the above statute was an in-
flexible command, that the county commissioners were
thereby required to levy a tax which would produce five
cents per day for each pupil in attendance in the com-
mon schools within the county, and that the total
amount of the county levy should be allocated between
the common schools and the current expense fund. The
decision in that case received state-wide recognition
and consideration by those who were interested in the
subject of taxation and the reduction of taxes.

With that construction of the statute by this court
fresh in the minds of the voters, the people, at the gen-
eral election held November 6, 1934, enacted initiative
measure 94, reiterating the restriction upon the amount
of county levies, and further reducing the state levy
from five mills to two mills. No other construction of
the act of the people can, therefore, reasonably be in-
dulged than that they accepted as final the interpreta-
tion given by this court to the 1933 act, Rem. 1933 Sup.,
§ 4936, and that they wrote that interpretation of the
statute into initiative measure 94, intending that the
statute should receive the same construction under
initiative measure 94 as it had received under initiative
measure 64, namely, that Rem. 1933 Sup., § 4936 (now
Rem. 1935 Sup., § 4936) was an inflexible command,
and that the levy therein prescribed for counties was
to be allocated to the common schools and the current
expense fund.

Respondents, however, contend that such construc-
tion of initiative measure No. 94 would render the
measure itself unconstitutional, because it would per-
mit the legislature to impose a tax upon the county for
a *county* purpose. What we have already said in the
earlier part of this opinion meets that contention and

need not be repeated here. It may also be noted at this point that the validity of initiative measure No. 94 was squarely presented to this court in *Love v. King County,* 181 Wash. 462, 44 P. (2d) 175, and was therein upheld.

It is finally contended by the respondents that the legislature recognized the plight in which the schools found themselves because of the reduction in millage permitted the counties under initiative measure No. 94, and therefore made special provision for school funds in the revenue act of 1935, chapter 180, Laws of 1935, p. 706, wherein, by § 211 of the act, p. 846 [Rem. 1935 Sup., § 8370-211], 58.51 per cent of the net revenues received from the taxes levied upon certain business activities were allocated to the state current school fund.

Chapter 180 did not expressly repeal Rem. 1935 Sup., § 4936, nor does it contain any language implying a repeal. Repeals by implication are not favored in law. The fair interpretation to be placed upon that act is that the legislature, recognizing its paramount duty toward education and recognizing, further, that the existent methods did not provide sufficient school revenues, desired to augment the funds theretofore provided. That act and Rem. 1935 Sup., § 4936, are entirely harmonious and complement each other.

In conclusion, we may say that we are fully cognizant of the difficulties in which the counties now find themselves by reason of the mandatory duties confronting them and the financial restrictions that beset them in the rear. The vehemence of counsels' argument, and the importunities implied therein, would, if nothing else, convince us of the seriousness of the situation and the difficulties that are thereby exposed. But the matters urged by counsel are, in their final analysis, considerations to be addressed to the legislature or to the

160

people, and not to the courts. Correction, or relief, must be sought there, not here.

The judgment is reversed, with direction to the trial court to sustain the several demurrers.

MITCHELL, TOLMAN, GERAGHTY, and MAIN, JJ., concur.