[No. 24874. *En Banc.* December 1, 1933.]

ROBERT DENNY, *Appellant,* v. MELVIN S. WOOSTER, *as
Assessor of King County, et al., Respondents
and Cross-appellants,* THE CITY OF SEATTLE,
*Cross-appellant.*[1]

[1]Reported in 27 P. (2d) 328.

*McMicken, Ramsey, Rupp & Schweppe* and *Winlock Miller, Jr.,* for appellant.

*Robert M. Burgunder, Arthur M. Hare,* and *David J. Williams,* for respondents and cross-appellants Wooster *et al.*

*A. C. Van Soelen, J. Ambler Newton,* and *Glen E. Wilson,* for cross-appellant city of Seattle.

*Shorts & Denny, amicus curiae.*

MITCHELL, J.—This action was brought by Robert Denny, a resident taxpayer of Seattle, against Melvin S. Wooster, as assessor of King county, to prevent him from extending upon the tax rolls of the county for the year 1933 taxes to be collected in 1934, any levy on behalf of the county of King or on behalf of the city of Seattle in excess of that permitted by initiative measure No. 64, approved by the voters at the general election November 8, 1932, effective December 8, 1932, commonly known as the forty mill law, now constituting chapter 4, Laws of 1933, p. 47, the same being Rem. 1933 Sup., § 11238-1.

It was alleged in the complaint, and also in the amended complaint on which the case was tried, that the threatened action on the part of the assessor involved certain enumerated levies on the part of both the county and the city that were illegal and void. Upon the filing of the complaint and a supporting affidavit by the plaintiff on October 10, 1933, a restraining order was issued and thereafter duly continued in force until the entry of final judgment.

The city of Seattle, by leave of court, appearing separately, filed its complaint in intervention; likewise King county and its commissioners, as the board of

county commissioners, by leave of court, filed their complaint in intervention.

The issue, so far as the county was concerned, that is material to the appeal, involved the spreading on the tax rolls of a proposed levy, as to millage of the following general items: (1) Current expense, ten mills; (2) bond interest and redemption fund and bond sinking fund, five mills; and (3) current expense warrant indebtedness for retiring emergency warrants issued during the preceding fiscal year and prior to and still outstanding on December 8, 1932, the effective date of the forty mill law, 4.53 mills.

The issue with respect to the city, now material on the appeal, related to spreading on the tax rolls a proposed levy of one-half mill for the firemen's relief and pension fund, *in addition* to the limitations provided for in the forty mill law.

The case was tried before two judges of the superior court for King county. The issue involving the county levy was decided against the plaintiff. The issue relating to the levy of the city was decided against the city. From a judgment accordingly, appeals have been taken.

As a preliminary matter, we notice the only assignment of error on the part of Wooster, King county and the board of commissioners of King county that "the court erred in overruling the demurrer on the ground that it did not have jurisdiction of the subject-matter of the action." The city, by an assignment of error, also raises the same question. The argument in support of the assignment rests upon chapter 62, Laws 1931, p. 201, Rem. Rev. Stat., § 11315-1 *et seq.*, the important portions of which, so far as the present case is concerned, are as follows:

"Injunctions and restraining orders shall not be issued or granted to restrain the collection of any tax

or any part thereof, or the sale of any property for the non-payment of any tax or part thereof, except in the following cases:

"(1) Where the law under which the tax is imposed is void; and

"(2) Where the property upon which the tax is imposed is exempt from taxation." Rem. Rev. Stat., § 11315-1.

"In all cases of the levy of taxes for public revenue which are deemed unlawful or excessive by the person, firm or corporation whose property is taxed, or from whom such tax is demanded or enforced, such person, firm or corporation may pay such tax or any part thereof deemed unlawful, under written protest setting forth all of the grounds upon which such tax is claimed to be unlawful or excessive; and thereupon the person, firm or corporation so paying, or his or its legal representatives or assigns, may bring an action in the superior court against the state, county or municipality by whose officers the same was collected, to recover such tax, or any portion thereof, so paid under protest: . . ." Rem. Rev. Stat., § 11315-2.

It is not contended, indeed it could not well be argued, that there would be any lack of jurisdiction in the court in the absence of this statute. In *Union Trust Co. v. Spokane County,* 145 Wash. 193, 259 Pac. 9, we quoted, with approval, as being in harmony with the great weight of authority, from *Gould v. Gould,* 245 U. S. 151, as follows:

"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government, and in favor of the citizen."

Following that rule, the principle of which applies here, we must not extend the provisions of the act of 1931 against the granting of restraining orders in

cases of this kind "beyond the clear import of the language used, or enlarge their operations so as to embrace matters not specifically pointed out." The statute says: "Injunctions and restraining orders shall not be issued or granted to restrain the *collection of any tax or any part thereof.*" To make the purpose of the statute plain, it may be compared with a Federal statute set out in *Casco Co. v. Thurston County,* 163 Wash. 666, 2 P. (2d) 677, 77 A. L. R. 622, against a suit "for the purpose of restraining the *assessment or collection of any tax,*" a most extensive field of official conduct, while our statute is limited to the prohibition against the restraint of only the "*collection* of any tax or any part thereof." It follows, therefore, that to give our statute the effect insisted upon by the county and city would violate the established rule against extending such provisions beyond the clear import of the language used.

There is a reason for this construction of the language against granting injunctions with respect to the *collection* of a tax as distinguished from a levy. A levy is not collectible until merged into a tax in specific sums against specified properties. At the commencement of this action, at the time the judgment was entered, or indeed at the present time, even if these injunctive proceedings had not been brought, a taxpayer could not pay taxes under the levies in question; nor could the county have collected them by agreement with the taxpayer, or otherwise. It ought not be held that, prior to the right to pay or collect taxes, a taxpayer should be deprived of the right to seek redress against a threatened course of official action leading to the imposition and lien of a void tax. The essential purpose of statutes against injunctive remedies in tax cases is to prevent the delays of legal proceedings interfering with the maintenance and

operation of government. But that reason does not apply in such case as this, where the appeal to equity is diligent and in sufficient time to avoid evil results.

Reliance is had on *Casco Co. v. Thurston County,* 163 Wash. 666, 2 P. (2d) 677, 77 A. L. R. 622. That case, however, was well within the statutory rule against injunctive relief, and properly marks that line of cases. It was not claimed therein that the tax was void or the property exempt from taxation, but that the property was so grossly overvalued for taxation purposes that it resulted in a greatly excessive tax. It involves both questions of law and fact, and was not brought until after the taxes were mature and collectible. That case was clearly within the terms of the act against injunctive remedies; this one is clearly without them.

On the plaintiff's appeal, it is contended that the county levy of 4.53 mills to meet current warrant indebtedness, in addition to ten mills for current expense and in addition to five mills for bond interest and redemption fund and bond sinking fund, is illegal and void. The argument is that, because chapter 130, Laws of 1925, Ex. Ses., p. 277, § 77 (Rem. Rev. Stat., § 11238), provides:

"The tax for the payment of county indebtedness shall not exceed five mills on the dollar of assessed valuation of the property of the county,"

and because, in the present levy, five mills is provided with respect to bonds, interest on and retirement of bonds, to then add 4.53 mills to meet current outstanding warrant *indebtedness* is contrary to the limit fixed by the 1925 act. That is, that so much of the levy for *bond and warrant indebtedness as exceeds five mills fixed by the 1925 act is illegal and void.*

Clearly, however, that provision of the law as to the limit to tax is no longer in effect. The law upon that

subject now is the forty mill tax levy law, which appears to be complete when construed according to the general rule with reference to all its parts. For the purposes of this case, that law is as follows:

"Section 1. Except as hereinafter provided, the aggregate of all tax levies upon real and personal property by the state, county, school district and city or town, shall not in any year exceed forty mills on the dollar of assessed valuation, which assessed valuation shall be fifty per cent of the true and fair value of any such property in money, and the levy by the state shall not exceed five mills, the levy by any county shall not exceed ten mills, including the levy for the county school fund, the levy by or for any school district shall not exceed ten mills, and the levy by any city or town shall not exceed fifteen mills: *Provided,* That nothing herein shall limit the power of any county to levy taxes, at the rate provided by law, for any taxing district, other than a school district, where such taxing district includes less than the whole county: *Provided further,* That the limitations imposed by this section shall not prevent the levy of additional taxes to pay interest or principal on bonds issued by or thru the agency of the state, or any county, city, town or school district, nor the levy of additional taxes to pay interest on, or toward the reduction at the rate provided by statute, of the principal of county, city, town or school district warrants outstanding at the time of the taking effect of this act: . . ." Rem. 1933 Sup., § 11238-1.

The central thought or theory of this act was to start anew with a tax limit for the future of forty mills, consisting of not to exceed five mills for the state, not to exceed ten mills for the county, not to exceed ten mills for any school district, and not to exceed fifteen mills for any city or town; and, cognizant of outstanding indebtedness of the different taxing districts, it is declared in the further or second proviso, not that the general limitations imposed should take care of outstanding indebtedness, but that

the general limitations imposed by the section *should not prevent* the levy of additional taxes for two specified purposes:

(1) To pay interest or principal on bonds issued by or through the agency of the respective taxing districts; and (2) to pay interest on or toward the reduction of the principal of county, city, town or school district warrants outstanding at the effective date of the act; the amounts of the levies for such additional taxes not being limited by any stated amount of millage, they are, of course, to be fixed as necessity requires to *pay interest or principal on bonds,* in the one case, and to *pay interest on or toward reduction, at the rate provided by. statute, of the principal of warrants outstanding at the effective date of the act,* in the other case.

Manifestly, the purposes and clear import of the act were and are to limit the amount of taxes to be levied in the future on real and personal property; to bring about necessary reductions in the cost of government; and to negative any thought whatever of repudiating present indebtedness represented by outstanding bonds and warrants. Such was the common understanding of the purpose of the law, according to arguments supporting that view submitted by authority of law at the time the act was submitted to the people for their support at the general election. The plan for additional levies has been followed in this case, and the objection that the total of the two levies for indebtedness of the several kinds exceeds five mills is without merit.

It is still further contended by this appellant that, because a certain stated amount of warrants outstanding on December 8, 1932, were paid prior to the present levy in October, 1933, to that extent this levy

of 4.53 mills should be reduced. Precisely, the argument is that

". . . warrants, representing approximately four hundred thousand dollars, which had been outstanding prior to December 8, 1932, had in the meantime, and prior to the 1933 levy, been paid by other funds. Thus a levy of 1.12 mills is for current expense warrants issued subsequent to December 8, 1932."

This case, however, is of equitable cognizance at the suit of this appellant; and bearing in mind the theory of the new law authorizing the taking care of warrant indebtedness outstanding at the effective date of the new law, equity requires that the present levy shall be sufficient to enable the county to reimburse the fund out of which the warrants in question were paid. It is simply a new form of the same indebtedness of the county, that is within the purview of the new law and was properly covered by the levy.

On the city's appeal, beyond the question of the jurisdiction of the court over the subject matter of the action, already discussed, it is assigned that the court erred in not holding that the city has express authority to levy one-half mill for the firemen's relief and pension fund, in addition to the limitations of the forty mill law. Counsel rely on Rem. Rev. Stat., § 9573, Laws of 1929, p. 155, to the effect that, when requested in writing by two-thirds of the members of the board of trustees of the firemen's relief and pension fund (which was done in the present case), the city council or commissioners of each city or town shall, at the time other levies of taxes are made, levy an additional amount not to exceed one-half mill required by the pension fund. The argument is that this provision of the law is mandatory, and not repealed directly or impliedly by the forty mill law.

Whatever may be the name of the several subordinate funds of the city for the expenses of future operation, it is obviously the intent of the new law that such expense as the firemen's relief and pension fund shall be taken care of by the general levy allowed the city, not exceeding fifteen mills.

In discussing and deciding the various questions involved, we have found it unnecessary to follow counsel in the consideration of former statutes of this state and decisions construing them, or the statutes and decisions of other jurisdictions, because, in the final analysis, they do not embrace provisions comparable to those presented here. This new act is a complete law in and of itself upon the questions in this case, differing from all others cited.

The judgment appealed from is in all respects affirmed.

BEALS, C. J., MAIN, HOLCOMB, MILLARD, BLAKE, and GERAGHTY, JJ., concur.

STEINERT, J. (dissenting)—I do not agree with that portion of the majority opinion which is devoted to plaintiff's appeal. Upon its face, the opinion sounds logical and is very persuasive, but a consideration and an analysis of the true situation and of the status of the law that bears upon it lead me to a different conclusion.

Prior to the passage of what is termed the ''forty-mill tax limit'' act, which is initiative measure No. 64 (chapter 4, Laws of 1933, p. 47, Rem. 1933 Sup., § 11238-1), the legislature in the extraordinary session of 1925 had passed an act relating to assessment, levy and collection of taxes. Chapter 130, Laws of 1925, Ex. Ses., p. 277. Section 77 of that act, so far as it is material here, provides:

"For the purpose of raising revenue for state, county and other taxing district purposes, the board of county commissioners of each county at its October session, and all other officials or boards authorized by law to levy taxes for taxing district purposes, shall levy taxes on all the taxable property in the county or district, as the case may be, sufficient for such purposes; provided, that unless and until otherwise provided by law, . . . the *tax for the payment of county indebtedness* shall not exceed five mills on the dollar of assessed valuation of the property of the county . . ." (Italics mine.) Rem. Rev. Stat., § 11238.

Other specific *items* of taxation were similarly limited to specific millage rates. By the proviso in the foregoing section, therefore, the constituent *items* of the total levy were specifically limited. That provision of the 1925 act was re-enacted in chapter 303, Laws of 1927.

When the people adopted initiative measure No. 64, they knew, or must be considered as then knowing, of the existence of the prior statute and its limitations. In other words, they knew that the limitation upon the specific *item* for county indebtedness was five mills. They must, therefore, have *legislated* with respect to the law as it then stood, with the view of either repealing it or else of adopting it. I waive the argument that the people, impelled by necessity on the one hand and staggering taxation on the other, resolved primarily to restrict the burden of taxation to an outside limit of forty mills upon assessed valuations, and I will therefore consider the question, as have the majority, wholly as a legal and technical problem.

It is conceded, I think, that initiative measure No. 64 did not *expressly* repeal the 1925 act. I will, likewise, concede that it did not *expressly* adopt it. This, then, leaves only the question whether the initiative measure *impliedly* repealed or *impliedly* adopted the

former act. It must further be conceded by all, I think, that, unless the former act was, or is, impliedly repealed, it still stands, and the two acts must therefore be read in *pari materia.* When so read, the purpose and intent of the people as expressed in the initiative measure become plain. In effect, they said this: The limit for the specific item of "tax for the payment of county indebtedness" being *five mills,* we, the people, enact this measure by which the aggregate of all taxes levied upon real and personal property shall not exceed forty mills on the dollar of assessed valuation, upon the condition, however, that *if* the levy of five mills "for county indebtedness," already permitted, shall have the effect of increasing the aggregate levy for all purposes beyond the total of forty mills per dollar of assessed valuation, then, and only then, shall such excess be legal.

In the present case, the item levied for county indebtedness not only exhausts the five-mill limit, but extends it to 9.53 mills. The people certainly did not expect that their officials would, nor did they intend that they should, exceed the legal limit already prescribed for specific *items* of taxation, and by a circuitous procedure, year by year, accomplish that which they could not otherwise do. The county may now evade the intent of the "forty mill tax limit" act by the simple device of levying additional taxes to pay "toward the reduction" of its present outstanding warrant indebtedness, while it permits its future indebtedness of the same kind to accumulate.

It is elemental that, if two acts, when read together, are not inconsistent, then there is no implied repeal of the one by the other, and further, that two acts upon the same subject should be so construed as to make them both effective, if possible.

"Repeals by implication are not favored, and will not be indulged if there is any other reasonable construction. The presumption is always against the intention to repeal where express terms are not used, and the implication, in order to be operative, must be necessary. A law is not repealed by a later enactment, if the provisions of the two laws are not irreconcilable nor necessarily inconsistent, but both may stand and be operative without repugnance to each other. Nor can one act be allowed to defeat another if, by a fair and reasonable construction, the two can be made to stand together. Although two acts are seemingly contradictory or repugnant, they are, if possible by a fair and reasonable interpretation, to be given such a construction that both may have effect. If a later act not repugnant to the earlier and containing no negative words is not clearly intended to cover the whole ground of the earlier, there is no implied repeal." 25 R. C. L., p. 918, § 169.

Under the construction that I place upon the two acts, they are entirely consistent and harmonious: the "tax for the payment of county indebtedness" is thereby limited to five mills, and if the five-mill tax for that *item* extends the aggregate of all taxes levied beyond the forty mill limit, the excess is still permissible and legal. But the act should not be so construed as to permit the levy "for county indebtedness" to exceed the five-mill limit; otherwise, the "forty mill tax limit" act becomes wholly impotent.

I have read with considerable interest the two very able and exhaustive opinions written by the superior court judges who sat *En Banc* in the trial of the case below, and I believe that they were correct in their first opinion, which held that the levy for county indebtedness beyond the five-mill limit was illegal and void.

For the reasons herein expressed, I am compelled to dissent from the majority opinion.

TOLMAN, J., concurs with STEINERT, J.