[No. 26200. *En Banc.* September 10, 1936.]

JOHN W. GREB, *Appellant*, v. KING COUNTY *et al.,*
*Respondents.*[1]

*W. B. Stratton* and *Dean H. Eastman,* for appellant.

*The Attorney General* and *R. G. Sharpe, Assistant,*
for respondent state of Washington.

*Warren G. Magnuson* and *Edwin C. Ewing,* for re-
spondents King county *et al.*

GERAGHTY, J.—The plaintiff is the owner of real and
personal property in King county, against which there
was levied, for the year 1935, taxes for state, county,
and other purposes in the sum of $104.25. In the
amount of this tax, there was included seventy cents
on account of the delinquent taxes due the state from

[1]Reported in 60 P. (2d) 690.

King county for the seventh preceding year. This seventh-year delinquency was spread on the current roll, in accordance with the provisions of Rem. Rev. Stat., § 11223 [P. C. § 6882-71]. In February, 1936, when the 1935 taxes became payable, and within the period entitling the taxpayer to a rebate of three per cent for payment, the plaintiff paid the whole of his tax, but under protest as to the amount levied for the seventh-year delinquency.

Upon payment of the tax, plaintiff instituted this suit to recover from the county the sum of sixty-eight cents, being the net amount paid on the challenged item of the levy less the rebate. The defendants, King County and Ralph S. Stacy, county treasurer, demurred to the complaint for insufficiency of the facts. The state of Washington appeared in the action with a complaint in intervention. The plaintiff moved to dismiss the state's complaint in intervention and also demurred thereto.

The case was heard upon the pleadings, together with an agreed statement of facts embodied in the record by stipulation. The court sustained the demurrer to the plaintiff's complaint and denied the motion to dismiss the complaint in intervention. As the plaintiff declined to plead further, judgment was entered dismissing the action. The plaintiff appeals.

Rem. Rev. Stat., § 11223 [P. C. § 6882-71], under which the challenged item was added to the 1935 levy, follows:

"Within three days after the receipt of the record of the proceedings of the state board of equalization, the state auditor shall transmit to each county assessor a transcript of the proceedings of the board, specifying the amount to be levied and collected on said assessment-books for state purposes for such year, and in addition thereto he shall certify to each county assessor the amount due to each state fund and unpaid

from such county for the seventh preceding year, and such delinquent state taxes shall be added to the amount levied for the current year. The state auditor shall close the account of each county for the seventh preceding year and charge the amount of such delinquency to the tax levy of the current year. All taxes collected on and after the first day of July last preceding such certificate, on account of delinquent state taxes for the seventh preceding year shall belong to the county and by the county treasurer be credited to the current expense fund of the county in which collected.''

It is appellant's contention that the foregoing provision authorizing the levy for delinquent state taxes for the seventh preceding year was impliedly repealed by the forty mill tax limit law (initiative No. 94, Rem. 1935 Sup., § 11238-1a [P. C. § 6882-77b]), and that there is now no law authorizing the seventh-year levy; or, if the levy be yet authorized, it must be imposed within the limits provided in the forty mill limit law.

Under the forty mill limit law, the normal levy for state purposes is restricted to two mills to be used exclusively for the support of the state institutions of higher learning, with a proviso authorizing an additional levy for payment of interest and principal of general obligation bonds of the state. If the questioned item in the levy is controlled by the forty mill limit law, the state levy is in excess of the limit and, to the extent of the excess, illegal.

A better understanding of the provisions of Rem. Rev. Stat., § 11223 [P. C. § 6882-71], will be had by reference to other provisions of the tax structure of the state and the constitutional authority underlying it.

Rem. Rev. Stat., § 11220 [P. C. § 6882-68], provides for the organization of county boards of equalization and regulates their procedure. The county assessor

is required to keep an accurate record of the proceedings of the board and to correct the assessment rolls in accordance with changes made by the board, after which he is to make duplicate abstracts of the corrected values and forward one copy to the state board of equalization on or before the first Monday in August next following the meeting of the county board.

By the terms of Rem. Rev. Stat., § 11222 [P. C. § 6882-70], the state tax commission is constituted the state board of equalization. It is made the duty of this board to meet annually on the first Tuesday in September and to examine and compare the returns of the assessment of the property of the several counties in the state as shown by the returns of the county assessors. The board is then required to proceed to equalize the county valuations,

" . . . so that each county in the state shall pay its due and just proportion of the taxes for state purposes for such assessment year, according to the ratio the valuation of the property in each county bears to the total valuation of all property in the state.

"First. They shall classify all property, real and personal, and shall raise and lower the valuation of any class of property in any county to a value that shall be equal and uniform, so far as possible, in every part of the state, for the purpose of ascertaining the just amount of tax due from each county for state purposes."

The state board, after equalizing the county valuations, is required to levy the state taxes authorized by law, and

" . . . shall apportion the amount of tax for state purposes levied by the board, among the several counties, in proportion to the valuation of the taxable property of the county for the year as equalized by the board."

Within three days after the completion of its duties,

the president and secretary of the board are required to certify to the state auditor a record of its proceedings, including the tax levies for state purposes and the apportionment thereof to the counties.

Within three days after the receipt of the certificate of the levies made by the state board and the apportionment thereof among the counties, the state auditor is required by Rem. Rev. Stat., § 11223 [P. C. § 6882-71], quoted above, to transmit to each county assessor a transcript of the proceedings of the state board, specifying the amount to be levied and collected by the several counties for state purposes, and also to certify to each county assessor *the amount due to each state fund and unpaid from such county for the seventh preceding year and such delinquent state taxes shall be added to the amount levied for the current year.* The state auditor is then to close the account of the county for the seventh preceding year and charge the amount of the delinquency to the tax levy for the current year.

Rem. Rev. Stat., § 11238 [P. C. § 6882-77], provides:

"For the purpose of raising revenue for state, county and other taxing district purposes, the board of county commissioners of each county at its October session . . . shall levy taxes on all the taxable property in the county or district, as the case may be, sufficient for such purposes; provided, that unless and until otherwise provided by law, the state tax shall not exceed the amount levied by the state board of equalization; . . ."

So, then, the process by which the state tax becomes a specific charge upon the property within the county is, first, by the levying of a lump sum against the county by the state board of equalization, and, later, the spreading of this amount on the tax roll of the county through a levy made by the board of county commissioners.

It is to be noted with respect to the seventh-year delinquency that no action is taken by the levying authority of either the state or county. The state auditor ascertains from his books the amount due the state from the county for the seventh preceding year and certifies it to the assessor, who spreads it on the roll for the current year. If the term "levy" may be properly used at all with respect to the seventh-year delinquency, it is a levy having its foundation not in any act of the levying boards but in the statutory mandate imposing a ministerial duty upon the state auditor and county assessor. It may be called an accounting process for the collection of money already owing by the property and inhabitants of the county to the state. The delinquency for the seventh preceding year is a subsisting tax obligation of the county to the state.

Art. XI, § 9, of the state constitution is as follows:

"No county, nor the inhabitants thereof, nor the property therein, shall be released or discharged from its or their proportionate share of taxes to be levied for state purposes, . . ."

There is here evinced a purpose to preserve the integrity of state levies by forbidding the release or discharge of any county from its obligation to contribute its proportionate share of taxes for state purposes. The seventh-year delinquency remains a charge against the county, "the inhabitants thereof," and "the property therein," incapable of release or discharge, except by payment of the full sum to the state.

This delinquency is not a debt of the county in the sense of an obligation that would sustain a suit for a money judgment against the county government. Its obligation is against the territorial county, its inhabitants, and property, rather than against the county government. The term "county" may have different meanings according to the relation in which it is used.

It may mean the corporate government of the county, a territorial subdivision of the state, or the inhabitants of this subdivision. The expression "No county, nor the inhabitants thereof, nor the property therein," used in the constitution, would seem to imply the territorial, rather than the governmental, county. There is imposed a duty, charge, or obligation upon the inhabitants and property of the county to make contribution to the state government, rather than a financial charge against the corporate county government. The governmental obligation of the county is to spread and collect the tax and remit it when collected to the state, but the county government, as such, is not responsible for the default in payment of the individual taxpayer.

It would seem, then, that the provisions of Rem. Rev. Stat., § 11223 [P. C. § 6882-71], are but a process for the collection, in the current year, of the tax already due from the property and inhabitants of the county to the state funds. The tax burden of the county is not increased by the inclusion of this delinquency in the current levy, because it is a subsisting tax.

It is true that the inclusion of the amount, when spread anew, becomes a specific burden on the individual properties within the county, including properties that have already paid the seventh-year tax. But since the aggregate property of the county remains burdened with the delinquency, every unit of it is subject to a contribution to liquidate the burden.

The cases of *Denny v. Wooster*, 175 Wash. 272, 27 P. (2d) 328; *Walker v. Wiley*, 177 Wash. 483, 32 P. (2d) 1062; and *Love v. King County*, 181 Wash. 462, 44 P. (2d) 175, cited by appellant, are not in point here. Those cases had relation to new levies made for the current purposes of government. Neither the first nor second initiative can be construed as intending to disable the state from collecting taxes already levied. The

purpose of those laws was to limit the assessing bodies of the state and its governmental subdivisions to the rates of levy therein specified. The initiatives did not purport to disturb the existing machinery for the collection of taxes, their only purpose being to superimpose upon the existing tax structure specific limitations with respect to the levy of future taxes for the current purposes of government.

It is our opinion that the provision of § 11223 [P. C. § 6882-71] in relation to the seventh-year delinquency is not repealed by initiative No. 94, nor is it a new levy in the sense that it is included within the limitations of the initiative.

The judgment of the trial court is, accordingly, affirmed.

TOLMAN, HOLCOMB, BEALS, and BLAKE, JJ., concur.

STEINERT, J. (dissenting)—The importance of this case is not to be measured by the amount sought to be recovered, which is only sixty-eight cents. The true picture is presented by the fact that the sum total of taxes *levied* by King county alone in 1935 for the seventh preceding year delinquency was $106,581.64, and by all the counties of the state for the same period $401,382. Moreover, the levy will be a recurring one, from year to year, throughout the state. The question is, therefore, not only important but serious.

For the sake of argument, I accept the statement of the majority that the seventh-year delinquency is not a *debt* of the county in the sense that it would sustain a suit for a money judgment against the county government, but is, rather, an obligation against the territorial county, its inhabitants, and property; and that the governmental obligation of the county is simply to spread and collect the tax and remit it, when collected, to the state, but that the county government,

as such, is not responsible for the default in payment of the individual taxpayer. For the sake of argument, also, I accept the interpretation placed on Rem. Rev. Stat., § 11223 [P. C. § 6882-71], to the effect that the statute merely prescribes a process for the collection, in the current year, of the tax already due the state for the previous years.

But, assuming that the statute simply provides a *process* for collecting that which belongs to the state, that process is exercised through a *levy for taxes,* and we are immediately confronted by the fact that the people of this state have twice imposed, by two recent initiative measures, a limit upon the amount of taxes that may be *levied* in the future on either real or personal property. They have said that the process for collecting taxes shall not be exercised beyond certain prescribed limitations.

In November, 1932, the people adopted initiative measure No. 64 (chapter 4, Laws of 1933, p. 47, Rem. 1933 Sup., § 11238-1 [P. C. § 6882-77a]), commonly known as the forty mill law, which provides:

"Except as hereinafter provided, the aggregate *of all tax levies* upon real and personal property by the state, county, school district and city or town, shall not in any year exceed forty mills on the dollar of assessed valuation, which assessed valuation shall be fifty per cent of the true and fair value of any such property in money, and the levy by the state shall not exceed five mills, *the levy by any county shall not exceed ten mills,* including the levy for the county school fund, the levy by or for any school district shall not exceed ten mills, and the levy by any city or town shall not exceed fifteen mills; . . ." (Italics mine.)

The measure further provides for the levy of additional taxes for only two specified purposes: (1) To pay interest or principal on *bonds* issued by or through the agency of the respective taxing districts; and

(2) to pay interest on or toward the reduction of *warrants* of the districts, outstanding at the effective date of the act.

It is not disputed, but is, in fact, stipulated, that the levy for the seventh-year delinquency is in addition to the ten mill county levy.

Initiative measure No. 64 was fully considered, interpreted, and construed by this court in *Denny v. Wooster,* 175 Wash. 272, 27 P. (2d) 328. I quote from the opinion in that case:

"The central thought or theory of this act was to start anew with a tax limit for the future of forty mills, consisting of not to exceed five mills for the state, not to exceed ten mills for the county, not to exceed ten mills for any school district, and not to exceed fifteen mills for any city or town; and, cognizant of outstanding indebtedness of the different taxing districts, it is declared in the further or second proviso, not that the general limitations imposed should take care of outstanding indebtedness, but that the general limitations imposed by the section *should not prevent* the levy of additional taxes for two specified purposes: [those mentioned above] . . .

"Manifestly, the purposes and clear import of the act were and are to limit the amount of taxes to be levied in the future on real and personal property; to bring about necessary reductions in the cost of government; and to negative any thought whatever of repudiating present indebtedness represented by outstanding *bonds and warrants* [these italics mine]. Such was the common understanding of the purpose of the law, according to arguments supporting that view submitted by authority of law at the time the act was submitted to the people for their support at the general election."

The *Denny* case, though subsequently attacked, was followed and affirmed in *Palmquist v. Taylor,* 177 Wash. 306, 31 P. (2d) 894, and *Walker v. Wiley,* 177 Wash. 483, 32 P. (2d) 1062.

In November, 1934, the people adopted initiative measure No. 94 (chapter 2, Laws of 1935, p. 8, Rem. 1935 Sup., § 11238-1a [P. C. § 6882-77b]). This measure imposes upon counties the same ten mill limitation as initiative measure No. 64 does.

In *Love v. King County,* 181 Wash. 462, 44 P. (2d) 175, initiative measure No. 94 was considered, interpreted, and construed by this court. The opinion in that case presents the question to be determined and gives the answer in this language:

"The question with which we are now concerned is whether the people constituting the body politic of a state have the right to say, and the power to compel their assertion, that the taxes which may thereafter be *levied* by the county shall be limited or restricted, *either in rate or in amount.* We have no hesitancy in answering that question in the affirmative, both upon principle and upon the authority of settled precedent. Under our form of government, ultimate sovereignty, so far as the state is concerned, rests in its people, and so long as the government established by them exists, that sovereignty remains with them, except in so far as they have expressly surrendered it to a higher sovereignty.

" 'All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights.' Const. Art. I, § 1.

"State government has the inherent power to tax, and since taxation is a legislative process, the power to tax necessarily falls within the legislative branch of government, and in that branch rests absolute discretion, subject only to constitutional and inherent limitations. Under such limitations, the legislative branch has the power to determine *the amount or the rate of a tax,* and also the power to *limit the amount or rate of taxation by a county, town, municipality or other local subdivision.* 1 Cooley on Taxation (4th Ed.), § 69, pp. 171-176; § 162, pp. 358-360; § 165, pp. 361-363; 15 C. J. 632." (Italics mine.)

The opinion then refers to the *Denny* case, quotes the language already quoted therefrom above, and in its concluding paragraph says:

"The conclusions reached by us in these recent decisions were arrived at after mature consideration, and they reflect the deliberate judgment of this court. We are not at all disposed to overrule them. We are also satisfied that the people have the right, through initiative, to restrict and limit the taxing power of the county. By the passage of the measure, they have not 'suspended, surrendered or contracted away' the power of taxation. To the contrary, they have exercised that power through legislation."

These two cases, and the cases intervening, are determinative of the question before us. The people have the right, through initiative, to restrict and limit the taxing power of the county. By the passage of the initiative measures, they have not suspended or surrendered the power of taxation but have exercised that power through legislation. The county has no right, in the face of that legislation, to exceed the ten mill limit for any purpose whatever other than as specified in the initiative measure. A levy for the seventh-year delinquency is not provided for in the initiative measure and is not permissible as an additional levy, but must be included in the ten mill limit.

I, therefore, dissent.

MILLARD, C. J., MAIN, and MITCHELL, JJ., concur with STEINERT, J.