[No. 29166. Department One. December 20, 1943.]

LIBBY, McNEILL & LIBBY, *Respondent*, v. ORLAND IVARSON, *as Treasurer of Whatcom County, et al., Appellants.*[1]

[1]Reported in 144 P. (2d) 258.

724

F. M. *Hamilton* and *Lester Whitmore,* for appellants.

*Bogle, Bogle & Gates* and *Ralph B. Sproule,* for respondent.

*Kerr, McCord & Carey* and *Stephen V. Carey, amici curiae.*

GRADY, J.—This action was brought by Libby, McNeill & Libby against the treasurer of Whatcom county to restrain him from selling a quantity of canned salmon distrained by him for an alleged nonpayment of taxes assessed against it. A trial before the court resulted in a decree enjoining the sale, and the county treasurer appeals.

Between September 18 and October 8, 1942, the re-

spondent shipped from Alaska to Bellingham 67,284 cases of canned salmon, and stored them at the municipal dock. On January 9, 1943, the assessor of Whatcom county listed and assessed the salmon as of January 1, 1943. On March 17th, the appellant demanded payment of the full amount of the taxes, amounting to the claimed sum of $14,993.28, and payment thereof not having been made, he seized and distrained thirty-three hundred cases of the salmon. All of the other cases had been shipped out of the state prior to this time. Notice was given that the distrained salmon would be sold at public sale at the time and place fixed therein.

As a preliminary question and before discussing the case on its merits, the appellant urges that an action for an injunction cannot be maintained because of Rem. Rev. Stat., § 11315-1 [P. C. § 6882-189]:

"Injunctions and restraining orders shall not be issued or granted to restrain the collection of any tax or any part thereof, or the sale of any property for the non-payment of any tax or part thereof, except in the following cases:
"(1) Where the law under which the tax is imposed is void; and
"(2) Where the property upon which the tax is imposed is exempt from taxation."

The claim of appellant is that, as it does not affirmatively appear that the distrained salmon had been shipped out of the state nor that the assessor had been furnished with sufficient documentary proof that the stored salmon had actually been shipped to points outside the state on or before April 30th, as required by chapter 67 of the Laws of 1939, p. 189, it was not exempt from taxation.

This 1939 legislative enactment (being Rem. Rev. Stat. (Sup.), §§ 11130-4 to 11130-11 [P. C. §§ 6882-7p to 6882-7w]), inclusive, which for convenience, will be referred to in this opinion as chapter 67, so far as is applicable here, reads as follows:

"SECTION 1. . . . The term 'fish and fish products' shall mean and include all fish and fish products suitable

and designed for human consumption, excluding all others. . . .

"Sec. 2. All grains and flour, fruit and fruit products, vegetables and vegetable products, and fish and fish products, while being transported to or held in storage in a public or private warehouse shall be exempt from taxation if actually shipped to points outside the state on or before April 30th of the first year for which they would otherwise be taxable: . . .

"Sec. 3. The county assessor shall list and assess all such grains and flour, fruit and fruit products, vegetables and vegetable products, and fish and fish products as of January 1st of each year, without regard to any average inventory; but shall cancel any such assessment in whole or in proportionate part upon receipt of sufficient documentary proof that the property so assessed was actually shipped to points outside the state on or before April 30th of such year: *Provided,* That no such cancellation shall be made unless such proof be furnished to the county assessor before June 1st of such year: . . .

"Sec. 6. The purpose of this act is to encourage the storage of the commodities herein defined in the State of Washington and this act shall be liberally construed."

Now, it will be seen that the law provides that salmon brought into the state for storage, in order to be exempt from taxation, must be shipped out of the state on or before April 30th of the year assessed, and that the assessment shall be canceled if documentary proof be furnished before June 1st that it was so shipped.

The salmon in question was distrained March 17th. This action was commenced March 24th and tried on its merits April 27th. The time for shipment and furnishing proof thereof not having expired, the question of its present exemption was not, and could not have been, raised in the trial court, and, consequently, cannot be raised for the first time on appeal to this court. At the trial, the appellant contended that the salmon could not under any circumstances be exempt from taxation for the legal reasons assigned, and which we will discuss later on.

The inference to be drawn from the whole record is that all the salmon in storage on January 1st, except that dis-

trained, had been shipped out of the state, and that, had it not been for the distraint, the remainder would have been so shipped on or before April 30th. However, if it shall be made to appear to the trial court that this inference is not in accord with the true facts—that the stored salmon not distrained was not shipped out of the state on or before April 30th; that the distrained salmon was not so shipped within a reasonable time after entry of the decree herein, or that the documentary proof of shipment was not furnished as required by law—this case will not be considered as having adjudicated such rights or liabilities as the parties hereto may have or that may exist by reason thereof. For these reasons and because of the view we take of the validity of chapter 67, we hold that the respondent had the right to seek injunctive relief.

It is argued by appellant that the action must fail because a portion of the tax on the salmon in question is state taxes and to permit a cancellation of the assessment would, in so far as the state is concerned, violate § 9 of Art. XI of the constitution, which reads as follows:

"No county, nor the inhabitants thereof, nor the property therein, shall be released or discharged from its or their proportionate share of the taxes to be levied for state purposes, nor shall commutation for such taxes be authorized in any form whatever."

What we have to say in passing upon this question will apply also to the contention of the appellant that a personal property tax is a debt and personal obligation of the taxpayer, and the lien therefor attaches from and after the date the same is listed with and valued by the county assessor, so we shall consider them together.

We have held in *Wilberg v. Yakima County*, 132 Wash. 219, 231 Pac. 931, 41 A. L. R. 184, and the cases therein cited, and which was followed in *Mogan v. Larson*, 183 Wash. 287, 48 P. (2d) 621, that a personal property tax is a personal obligation of the taxpayer and, also, a lien upon the specific chattel assessed.

Section 1 of chapter 137 of the Laws of 1939, p. 387 (Rem.

Rev. Stat. (Sup.), § 11112 [P. C. § 6882-8]), and § 45 of chapter 206 of the Laws of 1939, p. 766 (Rem. Rev. Stat. (Sup.), § 11265 [P. C. § 6882-104]), in so far as material, are as follows:

"§ 11112. . . . All personal property in this state subject to taxation shall be listed and assessed every year, with reference to its value and ownership on the first day of January of the year in which it is assessed: . . ."

"§ 11265. . . . The taxes assessed upon each item of personal property assessed shall be a lien upon such personal property from and after the date upon which the same is listed with and valued by the County Assessor, . . ."

Speaking of § 9 of Art. XI of the constitution, we said in *Greb v. King County,* 187 Wash. 587, 60 P. (2d) 690, p. 592:

"There is here evinced a purpose to preserve the integrity of state levies by forbidding the release or discharge of any county from its obligation to contribute its proportionate share of taxes for state purposes."

In construing and applying these statutes, chapter 67, and this constitutional provision, they must be read and considered together and with reference to the subjects and classes of property to which they relate. Sections 11112 and 11265 are general statutes dealing with and relating to personal property generally subject to taxation in the state. In the enactment of chapter 67, the legislature stated its purpose, as set forth in § 6 thereof. It was recognized that annually there were large quantities of commodities, enumerated therein, that were transported in interstate and foreign commerce; that it would be convenient or necessary to store them for a time in a warehouse; and that under existing statutes they might become subject to taxation. The problem of whether their interstate character was such that they could not be taxed without a violation of the Federal constitution, or whether they had come to rest within the state and no longer had an interstate status, would be ever present. The revenue to be derived from their storage in the state and the other benefits to be derived, no doubt prompted the legislature to hold out some inducement to the owners and shippers of such com-

modities to bring them to and through the state, and such inducement was exemption from taxation, provided they were again shipped out of the state when the purpose of their storage had been served. It seems quite plain, therefore, that the legislature, while following the pattern of §§ 11112 and 11265, intended to and did provide for a conditional personal liability for the taxes assessed and a conditional lien on the commodities enumerated, subject to be defeated by the performance of conditions subsequent: the shipment of the property out of the state on or before April 30th and the furnishing of documentary proof thereof by June 1st. In this way, the various statutes are harmonized and all can apply and operate in their respective spheres.

The assessment of the canned salmon in this case being conditional only, the state would acquire no vested right in or to a share in any tax until that tax became a reality and was collected by Whatcom county; hence, § 9 of Art. XI of the constitution would not be applicable and nothing done under chapter 67 would be in violation of it.

■■ The appellant further contends that chapter 67 is a special, rather than a general, statute, and, as such, violates § 28 of Art. II of the constitution. This section is as follows:

"The legislature is prohibited from enacting any private or special laws in the following cases: . . .

"5. For assessment or collection of taxes or for extending time for collection thereof. . . .

"10. Releasing or extinguishing, in whole or in part, the indebtedness, liability, or other obligation of any person or corporation to this state, or to any municipal corporation therein. . . ."

Other constitutional provisions and statutes and cases are cited by the appellant in his brief relating to inhibitions against the release or remission of taxes, exemption of property from taxation, and classification of property for taxation purposes, but we do not consider them applicable here. We think the problem before us now can be solved by considering and applying the law with reference to

general and special laws and the effect to be given to the fourteenth amendment to the constitution of this state, the applicable part of which is as follows:

"AMENDMENT 14

". . . ART. VII, § 1. . . . Such property as the Legislature may by general laws provide shall be exempt from taxation. . . ."

In defining what constitutes a general law as distinguished from a special one, we said in *Young Men's Christian Ass'n v. Parish*, 89 Wash. 495, 154 Pac. 785, p. 497:

"The authorities are in substantial harmony upon the rule by which a law is to be tested to determine whether it is general or special. A special law is one which relates to particular persons or things, while a general law is one which applies to all persons or things of a class. A law is general when it operates upon all persons or things constituting a class, even though such class consists of but one person or thing; but the law must be so framed that all persons or things constituting the class come within its provisions."

The cases cited therein and *Richland Irrigation Dist. v. DeBow*, 149 Wash. 242, 270 Pac. 816, and *Kennewick Irrigation Dist. v. Benton County*, 179 Wash. 1, 35 P. (2d) 1109, are to the same effect.

Applying these definitions and distinctions to chapter 67, we think there is no room for doubt but that it is a general law. It meets all our recognized tests for a general law. As applied to the facts of this case, it operates upon all fish and fish products suitable and designed for human consumption that are transported to, or held in storage in, a warehouse and are shipped out of the state on or before April 30th of the first year for which it would otherwise be taxable.

■■ In classifying property for taxation or exemption therefrom, the legislature has wide discretion, and its exercise is not subject to review by the courts unless clearly arbitrary or unreasonable and beyond its power. The placing of fish and fish products suitable and designed for human consumption in a class was clearly within the power of the

legislature. The fourteenth amendment made a very substantial change in the law with reference to the exemption of property from taxation. Pursuant to this amendment, the legislature has, by a general law, exempted the property enumerated in chapter 67 from taxation if certain conditions are complied with, and we think, in so doing, it acted within its constitutional powers.

The decree is affirmed.

SIMPSON, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.

[1] Reported in 144 P. (2d) 271.