[Nos. 25553, 25552. *En Banc.* April 23, 1935.]

FRANK SAINER, *Respondent,* v. THURSTON COUNTY *et al., Appellants.*

FRANK SAINER, *Respondent,* v. THURSTON COUNTY SCHOOL DISTRICT No. 319 *et al., Appellants.*[1]

[1]Reported in 44 P. (2d) 179.

*The Attorney General, W. A. Toner, Assistant,* and *Smith Troy,* for appellants.

*Harold P. Troy,* for respondent.

*McMicken, Ramsey, Rupp & Schweppe, amicus curiae.*

STEINERT, J.—These two actions were brought by a taxpayer to enjoin a county and a school district, respectively, from issuing and selling certain of their bonds. A general demurrer to each of the complaints was interposed by the defendants and overruled by the court. The defendants having elected to stand on their respective demurrers, the court entered a final order, in each case, enjoining the issuance of the bonds. The defendants have appealed from these orders. By stipulation, the two actions have been consolidated.

The material allegations of the complaint against the county are as follows: On January 26, 1935, the commissioners of Thurston county adopted a resolution, designated an emergency resolution, which provided for the issuance of bonds for indigent relief in the sum of fifty thousand dollars. A copy of the resolution is attached to the complaint and, by reference, made a part thereof. Based upon a recital of the dire conditions in Thurston county, brought about by economic stress, unusual financial circumstances and conditions of unemployment rendering many families des-

titute, and upon a further recital that the indigent fund of the county was completely exhausted, the resolution declared that an emergency existed and that, to meet such emergency, the county should issue its bonds in the sum of fifty thousand dollars, ''to be redeemed within a period of.................................years from date of the issuance thereof,'' and to mature annually in numerical order so as nearly as practicable to retire all bonds within the redemptionary period, in such amounts as would, together with interest on all outstanding bonds, be met by a tax levy for the payment thereof, and that an equal annual tax levy be made to meet the annual payments of principal and interest. At the time of the adoption of the resolution, Thurston county had an existing, outstanding indebtedness in excess of the five per cent limitation provided by law, and the issuance of the bonds would obligate the county in further excess of its constitutional limitation of indebtedness.

Following the above allegations is paragraph V of the complaint, which reads as follows:

''That in accordance with the valuations of the property in respondent county [appellant here] subject to levy and taxation no greater fund can be raised within the limitations of Initiative No. 94 adopted by the electorate of the state of Washington on the 6th day of November, 1934, as the same appears of record on file in the office of the Secretary of State of the state of Washington than is necessary to perform the mandatory governmental functions of said respondent county and that the issuance of said bonds will obligate the county in excess of its ability to fund and repay within said limitations.''

The material allegations of the complaint against the school district are as follows: On February 17, 1934, school district No. 319, through its directors, adopted a resolution providing for the issuance and

sale of its bonds, in the sum of twenty thousand dollars, to be retired, as nearly as practicable, within a period of ten years from the date of their issuance by an equal annual levy beginning the second year after such issuance. Pursuant to the resolution, an election was duly and regularly held on March 3, 1934, at which the electorate of the district authorized the issuance of the bonds. A call for bids for the purchase of the bonds was thereafter published, and on January 5, 1935, the state of Washington submitted its bid for the entire issue. The school district accepted the bid, and a sale of the bonds to the state is now pending. Following these allegations is paragraph IV of the complaint, which reads as follows:

"That in accordance with the valuation of the taxable property in said district no greater fund can be raised within the limitation of the provisions of Initiative No. 94 adopted November 6, 1934, by the electorate of the state of Washington, as the same appears of record and on file in the office of the Secretary of State of the state of Washington than is necessary to perform the mandatory educational functions of said district, and that in the event that said bonds are issued and sold a greater levy will be required than the limitation imposed, as aforesaid, and that by reason thereof said respondent district will be obligating itself in excess of its ability to fund and pay."

As already stated, the defendants elected to stand on their demurrers, which the court had theretofore overruled. The question before us, therefore, is whether either of the complaints stated a cause of action.

We gather from the briefs, and from the argument, that the question which respective counsel would like for us to determine, under the pleadings, is whether the county or the school district has an inherent or implied right to bind itself to make levies in excess of the limitations prescribed by initiative measure

No. 94 [Rem. 1935 Sup., § 11238-1a]. A similar question was presented in the case of *Love v. King County,* *ante* p. 462, 44 P. (2d) 175, and it was therein held that the county had no such right. In that case, however, it plainly appeared from the complaint that the county had, by resolution, expressly bound and obligated itself irrevocably to pay the bonds by a direct tax levied annually on all taxable property in the county, *without restriction or limitation as to the rate or amount of such tax.* The facts thus appearing upon the complaint, they stood admitted by the demurrer. The law, as we construed it, was therefore made applicable to an admittedly existing state of facts.

In these cases, however, the situation presents a different aspect. An examination of the complaints reveals that the vital allegations touching the question propounded are not allegations of fact, but are merely conclusions of the pleader. As to the county, it is alleged that the issuance of the bonds *will obligate* it in excess of its ability to fund and repay within the limitations of initiative No. 94. As to the school district, it is alleged that, in the event that the bonds are issued and sold, a greater levy *will be required* than the limitation imposed, and that, by reason thereof, the district *will be obligating* itself in excess of its ability to fund and pay.

As pointed out in the *Love* case, constitutional limitations upon municipal indebtedness prescribed by Art. VIII, § 6 of the state constitution, do not include those necessary expenditures made mandatory in the constitution and provided for by the legislature and imposed upon the municipality, or which are necessary in order to perform a governmental duty or to maintain the corporate existence of the municipality; also, it is the duty of the county to provide for poor persons therein who are in need of assistance, and the

discharge of such duty is a governmental function. It should also be kept in mind that, so far as the school district is concerned, the issuance of its bonds has been legally authorized by the electorate. So, as to both the county and the school district, their right to *incur the indebtedness* can not be impeached.

But, proceeding from that point, it can not be assumed, nor can the allegations of the complaint be made a factual basis for holding, that either the county or the school district must, or have irrevocably obligated themselves to, levy taxes in excess of the limitations prescribed by initiative measure No. 94. Under Rem. Rev. Stat., § 5583-1 [P. C. § 5470-11], the various annual maturities of all bonds shall commence with the *second* year after the date of their issue and shall, as nearly as practicable, be in such amounts as will, together with interest on all outstanding bonds, be met by an equal annual tax levy for the payment thereof. By Rem. Rev. Stat., § 5583-2 [P. C. § 5470-12], the proper officials are required, in the manner provided by law, to make an annual levy sufficient to meet the annual or semi-annual payments of principal and interest on the bonds as they mature.

Manifestly, it can not be determined now that a levy in the future will be in excess of the limitations prescribed by initiative No. 94. There are at least two contingencies that may arise to forestall that result: Either the financial condition of the taxing district may become such as to make a levy legal, even under the limitations of initiative No. 94; or, by the time that a levy is made, the initiative measure may have been repealed by the legislature. We can not forecast either of those conditions, nor can we say now that they will not actually exist then. Time alone can tell.

Under the factual allegations of the complaints, admitted by the demurrers as being true, the question

presented is not whether the county or the school district has the right to levy a tax in excess of the limitations of initiative measure No. 94, but whether they have the right to incur the indebtedness represented by the bonds. Upon the question thus presented, there can be but one answer. The county and the school district both have the legal right to incur the indebtedness, irrespective of their subsequent inability to meet the payments on maturing bonds by levies within the limitations of the initiative measure. To put the proposition in converse form, the subsequent inability to meet the payments by the levy of taxes within the limitations of initiative measure No. 94 does not render the county or the school district wholly powerless to incur the indebtedness. The orders overruling the demurrers to the complaints prevent the county and the school district from even incurring the indebtedness, thereby foreclosing them from exercising rights which they legally have. It is but fair to say that, judging from the argument made in this court, that point was not stressed before the trial court. At any rate, for the reasons that we have assigned, we conclude that the court was in error in overruling the demurrers.

It is not to be understood, however, from anything that we have said herein, that, if either the county or the school district does issue its bonds, it may, for the payment thereof, subsequently make levies in excess of the limitations prescribed by law. The extent of our holding is that, under the allegations of the complaints, neither the county nor the school district is prevented from merely incurring the indebtedness evidenced by the particular bond issues.

The orders appealed from are reversed, with direction to the superior court to sustain the demurrers to the complaints.

ALL CONCUR.