[Nos. 27843, 27878. *En Banc.* February 2, 1940.]

KING COUNTY *et al., Relators,* v. CLARENCE D. MARTIN *et al., Respondents.*

JACK TAYLOR *et al., Respondents,* v. EARL MILLIKIN, *as Auditor of King County, Appellant.*[1]

[1]Reported in 98 P. (2d) 686.

B. *Gray Warner, Wm. Hickman Moore,* and *Lloyd W. Shorett,* for relators and appellant.

*The Attorney General, Harry L. Parr* and *W. A. Toner, Assistants,* for respondents.

*Ralph E. Foley, Harvey Erickson, Thor C. Tollefson,* and *Gilbert E. Peterson, amici curiae.*

SIMPSON, J.—These are proceedings in mandamus. In the first case, relators, in an original action in this court, seek a writ compelling the state social security committee to allocate from state funds a grant-in-aid for public assistance in the sum of $668,177.39. The second case involves an appeal from a judgment of the King county superior court in which that court ordered respondent, Earl Millikin, as county auditor, to issue warrants provided by an emergency resolution passed by the county commissioners of King county.

The cases involve the same questions and, by stipulation, have been consolidated in this court. We consider them in one opinion.

Just prior to September 11, 1939, the county commissioners of King county ascertained that the fund necessary to provide for public assistance would not be sufficient to meet the demand on the fund for the months of October, November, and December of that year.

September 15, 1939, the commissioners and the county administrator prepared a budget, in compliance with requirements of Rem. Rev. Stat. (Sup.), § 10007-111a (Laws of 1939, chapter 216, p. 872, § 11), and submitted it to the department of social security and the state social service committee. The budget set forth the total requirements of the county's general assistance relief needs for the last quarter of 1939 in the total amount of $870,947.75, and an estimated unexpended balance in the county public assistance account of $264,276.50. The budget was accompanied by an application for a special grant-in-aid from the state in the amount of $606,671.25.

On or about the first of October, 1939, the committee approved the budget in the reduced amount of $425,-187.00. The estimated balance in the county fund had by then shrunk to $138,417.37. The sum of $64,362.99 was allocated by the committee, thus making available to the county the total sum of $202,780.36.

Subsequently, the committee approved a supplemental budget prepared by the county commissioners and the county administrator in the sum of $445,760.75, which amount, added to the reduced amount of the original budget, totaled the sum of $870,947.75, the amount of the budget originally submitted.

In answer to these requests for additional funds, the

social security committee sent to the King county commissioners the following letter, dated October 21, 1939:

"Board of King County Commissioners
County-City Building
Seattle, Washington
Gentlemen:

"The State Social Security Committee has approved a total budget covering public assistance needs in King County until December 31, 1939, in the sum of seven hundred thousand dollars ($700,000) or such part as may be required.

"The Committee has agreed to provide fifty per cent of the amount on a matching basis. Because the King County Commissioners cannot provide their fifty per cent without issuing emergency warrants, and because question has been raised as to their legal ability to issue such warrants, the Commissioners will arrange for a friendly test suit to determine their position.

"The State Social Security Committee has, therefore, further agreed to underwrite the King County Welfare Department and Hospital commitments for public assistance up to the amount of three hundred and fifty thousand dollars ($350,000) with the understanding that the County Commissioners will arrange for a prompt action through the courts to establish and clarify their financial responsibility and ability to meet the requirements for public assistance under the law.                         Sincerely yours,
CLARENCE D. MARTIN
Chairman, State Social Security Committee."

November 7, 1939, the commissioners caused to be instituted cause No. 27843, the first of the two actions, it being a petition in this court to compel the committee to allocate to King county the sum of $668,177.39, that being the balance between the total amount of $870,-947.75 approved by the committee, and the sum of $202,780.36 actually available to the county at the beginning of the quarter.

Shortly thereafter, November 10, 1939, the state social security committee and the board of King county

commissioners entered into an agreement, the relevant portions of which stated:

"WHEREAS, the party of the second part [the county commissioners] has brought an action against the party of the first part in the Supreme Court of the State of Washington asking for a mandamus to require the state to take care of the monies needed by the county to fully complete its program for the care of the needy and expenses of operating its relief machinery, including the county hospital, and is estimated that approximately $700,000.00 will be needed between October 2 and December 31, 1939.

"The Prosecuting Attorney of the county is of the opinion that the county has no right nor authority to issue emergency warrants, and that the three mill levy for social security constitutes the only enforceable obligation against the county for social security purposes. While the state contends that the responsibility for the care of the needy in King County is the responsibility of the County, and that it should discharge its duty by the issuance of emergency warrants. The State, however, is willing to advance to King County $350,000 or approximately one-half of the amount needed, upon the County Commissioners of King County passing a resolution declaring an emergency for the care of needy individuals in King County and the carrying out of the Social Security program for King County, and said resolution to be approved by the Prosecuting Attorney and the Attorney General's office.

"It is contemplated that action will be taken by, or on behalf of, the Prosecutor's office in King County to resist the issuance of emergency warrants, and that the Attorney General's office of the State of Washington shall defend the right of the County Commissioners to issue the emergency warrants. It is contemplated that the action involving the power of the County to issue the warrants shall be set at the same time and be heard either by consolidating the cause with the one now to be heard by the Supreme Court on December 15th, and the parties agree that the matter shall be brought to issue and tried with all reasonable

celerity and the parties stipulate and agree that if they do represent the County and the State that they will consent to the hearing of both causes before the Supreme Court upon the same day, and that a speedy determination may be reached.

"During the time that the County may be legally prevented from advancing its money for Social Security purposes, the State shall continue to meet the payments necessary as they accrue up to the limits of the budget approved by the Social Security Committee to the 1st day of January, 1940, the County Commissioners agreeing that if they have the power they will reimburse the State for all of the expense to which it shall be subjected by virtue of this agreement in excess of the amount the Social Security Committee is willing to advance to King County for the relief of the emergency."

November 14, 1939, the commissioners passed a resolution, the pertinent part of which reads:

"(1) A situation has arisen in relation to the financing of the activities of administration and of the payment of public assistance expenditures including direct relief, necessary public health activity, county general hospital and other parts of the general assistance program for King County, Washington, all for the quarter commencing with October 2, 1939, and ending December 31, 1939, calling for prompt and efficient action.

"(2) That in order to provide adequate relief and administration in King County for the period from October 2, 1939, to December 31, 1939, a budget has been regularly approved requiring the sum of $870,-947.75; of this amount there is available out of the unexpended funds applicable therefor a balance of $138,417.37 and a state grant of $64,362.00, making a total of $202,780.36, thus leaving a deficiency of $668,-167.39.

"(3) In an endeavor to provide funds for meeting this emergency this Board has sought aid from the Social Security Committee and has concluded an agreement with said Committee, a copy of the said agreement being attached hereto and being hereby referred

to for further particularity, the said agreement providing in short that the Social Security Committee will make an emergency grant-in-aid to King County of $350,000 provided that this Board of County Commissioners shall provide the balance of funds needed to finance the program by the issuance of emergency warrants. . . .

"(5)  The County Commissioners have regularly applied to the State Social Security Committee for grants-in-aid in the sum of $668,177.39 to meet this deficit, which request has been approved by the State Department of Social Security only to the extent of $350,000 and then only upon the condition that King County attempt to make an emergency appropriation to the amount of the remainder of the said deficit. . . .

"(7)  The said Social Security Committee has definitely and finally refused to make available any sum unless and until this emergency appropriation is made, thus creating the situation which will result in the discontinuance of relief and health service to the needy people of King County.

"(8)  That the Social Security Committee has attempted to limit the state grant-in-aid fund allocated to King County for the period from April 1, 1939, to December 31, 1939, to nine twenty-fourths of the total appropriated under chapter 223, Laws of 1939, for the biennium from April 1, 1939, to April 1, 1941; that sufficient of the appropriation made by the 1939 legislature under both chapter 223 and chapter 205 of the Laws of 1939 remain under the control of the State Social Security Committee to meet the needs in the amount of $668,177.39 but that the said Social Security Committee has allocated the funds available in such a manner that it refuses to advance the total amount needed and required to carry out the King County Budget. . . .

"(10)  It is contemplated that the Auditor of King County will refuse to issue any warrants authorized upon this emergency resolution and that the test suit will be brought to determine the power of the boards of county commissioners to make emergency appropriations under this or similar circumstances and in passing this resolution it is not the intention of the Board of County Commissioners of King County to recede from

the position taken by them in the case of King County, et al., vs. Clarence D. Martin, et al., No. 27,542 in the Supreme Court of the State of Washington.

"Now, for the following purposes assigned, to-wit: to provide funds carry on the general assistance program prepared by this board as part of the yearly plan and approved by the State Social Security Committee, we do declare that a public mandatory emergency now exists and there is appropriated to the general assistance account of King County the sum of $328,167.39.

"The County Auditor is hereby directed to keep account of all warrants issued by the county against this appropriation and to prepare therefrom a claim and application for reimbursement by the State of Washington in the sum of the total expenditures under this appropriation."

The auditor of King county refused to issue the warrants. The attorney general, representing the county, brought the second action, cause No. 27878, in the superior court seeking to compel the auditor to issue the warrants. In that action, the complaint set out in a general way the matters to which we have just referred. A demurrer to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action was overruled. The auditor refused to plead further, whereupon the court entered judgment to the effect that the writ of mandate be granted. The county auditor has appealed.

Error is predicated upon the overruling of the demurrer and in entering judgment granting the writ of mandate.

The petition for a writ of mandate in this court in cause No. 27843 sets out the preliminary negotiations relating to the submission and approval of the original and supplemental budgets, the committee's refusal to allocate to King county more than the sum of $64,-362.99, and the qualified offer by the committee of an additional $350,000. It is further alleged that King

county had no other funds at its disposal; that it was indebted beyond its statutory one and one-half per cent debt limitation; that it was without power to issue emergency warrants for relief until all state funds were exhausted; that the committee was attempting to prorate funds made available to it for use under chapter 216, Laws of 1939, p. 864 (Rem. Rev. Stat. (Sup.), § 10007-101a *et seq.*), for the biennium April 1, 1939, to April 1, 1941; that the committee has at its disposal under chapter 205, Laws of 1939, p. 718 (Rem. Rev. Stat. (Sup.), §§ 9992-15a, 9992-15b), an additional sum of $3,000,000 for emergency grants-in-aid to counties for general assistance purposes; that this fund is available in its entirety for such use by the committee. It is further alleged that the failure of the committee to allocate to King county the balance of $668,177.39 between the total approved budget needs of the county and the amount at its disposal, and the offer of $350,000 upon a matching basis, amount to arbitrary and capricious action on the part of the committee; that, due to this action, public assistance warrants distributed to needy persons, including the relator Richard Wade, are being refused by all financial institutions; and that the recipients of those warrants are unable to secure food, clothing, or shelter for themselves except at large discounts.

In their answer, the social security committee and the director deny that they had acted arbitrarily or capriciously, and contend that the committee has full discretion in the determination of the amounts they allocate to the counties as grants-in-aid; that an emergency has existed in King county since December 1, 1939; that the committee did appropriate sufficient funds to care for the emergency with the understanding that King county would reimburse the state for its

half of the necessary funds, provided it had the authority to issue emergency warrants for such purposes.

■ The first question is: Does the social security committee have the power, after a county's general assistance funds have been expended and a request for a grant-in-aid has been made and its necessity admitted, to compel a county to match the grant-in-aid funds before those funds are made available for use?

We hold that the committee does not have that power.

Determination of the problems with which we are here confronted must depend largely upon the meaning and effect ascribed to the provisions of the public assistance act. Laws of 1939, chapter 216, p. 864 (Rem. Rev. Stat. (Sup.), § 10007-101a *et seq.*)

Section one of the act, p. 864 (Rem. Rev. Stat. (Sup.), § 10007-101a), provides, *inter alia,* these definitions:

"The term 'Federal-aid assistance' shall mean the specific categories of assistance for which provision is made in the Federal Social Security Act of August 14, 1935, including old-age assistance, aid to dependent children, services to crippled children, child welfare services, other handicapped persons, aid to the needy blind and any other category for which the Federal government provides or for which it may hereafter provide matching funds.

"The term 'general assistance' shall mean all assistance other than Federal-aid assistance as herein defined: . . .

"The term 'public assistance' shall mean and include Federal-aid assistance and general assistance."

General assistance is further defined in § 10 of the act at page 871 (Rem. Rev. Stat. (Sup.), § 10007-110a):

" . . . General assistance within the meaning of this section shall include hospital and institutional care, medical care and public health activities. . . . "

The relief needs of King county, as described by the two budgets submitted to the committee for the last quarter of the year 1939, are, in their entirety, within these definitions of general assistance.

The following sections of the act refer to the counties' obligations in providing funds for general assistance purposes:

"The state hereby undertakes to make available to the counties from state and Federal funds sufficient moneys to enable the counties to discharge their responsibility with respect to Federal-aid assistance; while the respective counties shall provide funds by means of the county tax, hereinafter required to be levied, to discharge their responsibility for general assistance." Section 5, p. 867 (Rem. Rev. Stat. (Sup.), § 10007-105a).

"To the end that the department's supervision over county administration of public assistance funds may be made effective, it shall be the duty of the Board of County Commissioners of each county in the state to submit to the department, and through the department to the committee, not later than April 1, 1939, a county plan which shall include: . . .
"6. An agreement to make available for assistance purposes a sum equal to a three-mill tax levy upon the assessed valuation of its taxable property, together with such miscellaneous revenues as may accrue to the county through the operation of public assistance programs, and to apply such moneys in accordance with uniform standards prescribed by the department and submit quarterly reports of all expenditures for such assistance purposes within the county." Section 7, p. 868 (Rem. Rev. Stat. (Sup.), § 10007-107a).

"Each county in the state shall levy annually a tax upon the assessed valuation of its taxable property at a rate not less than three mills for public assistance purposes. The proceeds of such tax shall be deposited in the county current expense fund in an assistance account and shall be disbursed by warrant of the County Auditor upon a prescribed form authenticated

by the County Administrator and approved by the Board of County Commissioners. Disbursements of moneys in such account shall be made primarily for general assistance purposes and shall conform to the uniform standards established as specified in this act." Section 10, p. 871 (Rem. Rev. Stat. (Sup.), § 10007-110a).

"If any county finds that proceeds of the three-mill levy required by this act to be made for general assistance purposes are inadequate for such purposes, the County Administrator shall be empowered to submit to the director and committee a request for a special grant-in-aid of state funds. Such request shall be accompanied by a budget of estimated necessary expenditures for general assistance for the period covered by the request and such other data and information as the director may prescribe. For the purpose of this section general assistance shall include programs under Division 1 (b), Medical and Institutions. Upon consideration of such request and supporting budget, the committee shall allocate to the county such amount as in its judgment is proper for general assistance purposes, and immediately notify the administrator of the amount of the allocation. Disbursements for general assistance under this section shall be made by warrant of the County Auditor in the manner prescribed in section 10, and the county shall from time to time be reimbursed for such expenditures by warrant of the State Auditor drawn against the county's allocation of funds in the state treasury. In order to secure reimbursement under this section it shall be incumbent on the counties to maintain such records pertaining to expenditures and to conform to such other requirements in respect thereto as may be prescribed by the Department of Social Security." Section 11, p. 872 (Rem. Rev. Stat. (Sup.), § 10007-111a).

It is not denied that King county made the three-mill levy, and that revenues from that source and from those additional sources mentioned in § 7, *supra,* have been exhausted with the approval, and under the supervision, of the department.

Section 29 of the act, p. 881 (Rem. Rev. Stat. (Sup.), § 10007-129a), provides, in part, as follows:

"Any moneys made available for the purposes of this act shall be devoted exclusively to the furnishing of assistance to needy persons as authorized and provided by this act, and no part of said moneys shall be used for the sponsorship, in whole or in part, of any public works or work relief project or undertaking."

By the Laws of 1939, chapter 223, p. 946, the legislature made available the sum of $5,750,000 for assistance as provided for under the public assistance act.

Consideration of § 11 of the act, *supra*, together with § 29, *supra*, discloses that it was the plain intention of the legislature that the $5,750,000 appropriation be available to the committee, in part, for general assistance purposes.

Under § 2 of chapter 205, Laws of 1939, p. 719, the legislature made the following provision:

"For the purpose. of assisting counties, school districts, cities and towns and other municipal corporations in sponsoring public works and work relief projects, and for emergency grants-in-aid to counties for general assistance purposes, there is hereby appropriated from the general fund to the State Social Security Committee for the biennium ending March 31, 1941, the sum of three million dollars ($3,000,000)."

Section 3 of chapter 205, *supra* (Rem. Rev. Stat. (Sup.), § 9992-15b), at page 719, makes provision for the expenditure of this appropriation as follows:

"The moneys appropriated by this act shall be allocated from time to time by the Social Security Committee on application of counties and other sponsoring agencies for grants-in-aid. The committee shall have full discretion with respect to the allocation of such funds. It shall consider each application upon its merits and may require the agency applying for a grant-in-aid to submit such data as the committee may deem necessary to enable it to make a proper distribu-

tion of the available moneys, taking into consideration the financial condition of the agency applying for the grant, the number of unemployed persons who will be benefited thereby and such other factors as the committee may deem pertinent. Grants-in-aid allowed by the committee under this act shall be paid by warrant of the State Auditor at such intervals and in such manner as may be determined by the committee. The committee shall have power to require such reports and accounts with respect to funds allocated under this act as it may deem requisite to the efficient administration thereof."

Section 11 of chapter 216, *supra,* and § 3 of chapter 205, *supra,* are the only provisions which refer to or in any way define, control, or dictate the duties and powers of the social security committee in so far as grants-in-aid for general assistance purposes are concerned, and they must be considered together in order to ascertain the legislative intent. In neither do we find that the legislature has clothed the committee with power or authority other than to make allocations from the appropriations which are necessary for the purposes specified.

██ Laws of 1939, chapter 216, p. 883, § 36 (Rem. Rev. Stat. (Sup.), § 10007-136a), which reads:

"Nothing contained in this act shall be construed to derogate from, or limit, the power of Boards of County Commissioners to provide necessary county revenue by the declaration of emergencies in proper cases as provided by law;"

negatives the authority of the committee to compel county commissioners to declare emergencies. That section leaves intact the general authority of the county commissioners relative to the issuance of emergency warrants as contained in Rem. Rev. Stat., § 3997-6 [P. C. § 1652-6]. When an emergency exists, the power to issue emergency warrants lies solely within the discretion of the county commissioners.

■ The question next presented is whether the county commissioners have the authority to authorize the issuance of emergency warrants in the situation presented by these cases.

The acts, chapters 205, 216, and 223, *supra,* provide three sources from which money may be spent for general assistance, namely, the three-mill levy made by each county, the $5,750,000 and the $3,000,000 grant-in-aid funds. It was from these funds that the legislature determined the people entitled to general assistance aid should be supplied. King county furnished its initial share of the fund when it levied the three-mill tax. When the funds provided by the county were exhausted, it then became the duty of the social security committee to supply, from the appropriations made available by the legislature, funds which, in the exercise of its full discretion, were determined by the committee to be sufficient to accommodate the needs of the people of King county entitled to relief.

The grant-in-aid funds were, under one of the uses specified, made available to the county for the same purpose as those provided by the levy. The funds became an asset of the general assistance fund which could be drawn upon after the original amount raised by the county was exhausted. In other words, the general assistance funds, to which King county was entitled to have access, consisted of the amount produced by the county's three-mill tax levy, and an undivided portion of the state grant-in-aid appropriations.

It is apparent that the county commissioners could not vote emergency warrants if there were sufficient funds available to care for its needs. This rule applies even though some of those funds were in the possession or under the control of a state agency. Our holding, in the case of *Palmquist v. Taylor,* 177 Wash. 306, 31 P. (2d) 894, to the effect that county commissioners

could not, under the doctrine of necessity, levy a tax to cover an expected relief emergency, compels this conclusion.

The attorney general contends that the rule laid down in the cases of *Rummens v. Evans*, 168 Wash. 527, 13 P. (2d) 26; *Kruesel v. Collin*, 170 Wash. 233, 16 P. (2d) 442; *Love v. King County*, 181 Wash. 462, 44 P. (2d) 175; *Sainer v. Thurston County*, 181 Wash. 552, 44 P. (2d) 179; and *Goff v. Seattle*, 197 Wash. 665, 86 P. (2d) 222, compels the county to issue emergency warrants for the purpose of providing care for the poor, even though the county has exceeded its debt limitation.

We must observe, however, that those cases were decided prior to the passage of the acts under consideration, and that the state had not at any of the times mentioned in those decisions provided a reserve fund to be used in cases of emergency.

The question of the county's duty to provide funds by the issuance of emergency warrants, after the funds provided by the three-mill tax and the state appropriations have been exhausted, is not present in this case, and we express no opinion concerning it.

Under the facts which obtain in the case at bar, the county commissioners were without power to authorize the issuance of emergency warrants. It was, therefore, not only the right but the duty of the county auditor to refuse to issue the warrants.

Relators, in case No. 27843, ask that a writ of mandate be issued directing the social security committee to allocate from the state funds the balance of $668,177.39 needed for the last quarter of 1939.

They insist that the social security committee has, by approving the budget submitted to it, exercised its discretion and, having done so, must allocate to the county the amount shown in the budget. Assuming,

but not deciding, the rule to be as contended for by relators, an examination of the letter written to the county commissioners of King county by the governor, and of the contract signed by the social security committee and the commissioners, discloses that the approval of the budget request was conditional and depended upon the need. Requirements for relief constantly change, and this situation the committee evidently had in mind when it gave provisional approval of the budget.

■ The paramount intent of the legislature was to care for those in need. No showing has been made that the persons in want of general assistance are suffering or are not being properly cared for. On the other hand, as already stated, the committee has been providing funds for general assistance. There has been no showing made that it will refuse further aid if and when needed. Indeed, it plainly appears from the last paragraph of the agreement between the committee and the commissioners that the committee expressed willingness to underwrite the entire balance of need for general assistance in King county during the remainder of the quarter.

The whole tenor of the social security act indicates a clear legislative intent to vest the discretion and control of all relief measures in the department of social security. All the funds are controlled by and expended under the discretion of that state agency and the social security committee. This is especially true with regard to the grant-in-aid funds. Its control is vested by chapter 205, *supra,* in the social security committee, and they have full discretion with respect to its allocation.

■ In the absence of capricious or arbitrary action, mandamus does not lie to control the discretionary

powers of administrative or executive officers. *State ex rel. Boyle v. Ernst,* 195 Wash. 214, 78 P. (2d) 526.

We fail to see that the committee has acted arbitrarily in any way.

The judgment of the superior court is reversed, and the petition for writ of mandate in this court denied.

MAIN, BEALS, MILLARD, GERAGHTY, and JEFFERS, JJ., concur.

STEINERT, J. (dissenting in part)—I am in accord with the majority except as to that part of the opinion which reads as follows:

"It is apparent that the county commissioners could not vote emergency warrants if there were sufficient funds available to care for its needs. This rule applies even though some of those funds were in the possession or under the control of a state agency. Our holding, in the case of *Palmquist v. Taylor,* 177 Wash. 306, 31 P. (2d) 894, to the effect that county commissioners could not, under the doctrine of necessity, levy a tax to cover an expected relief emergency, compels this conclusion."

The effect of that pronouncement, as I view it, is simply this: Even though the county's actual general assistance needs for the quarter beginning October 1, 1939, amount to $668,177.39 in excess of the amount available to the county, according to the budget which the social security committee originally approved, or $497,229.64 in excess of the amount available to the county, according to the budget as finally approved by the committee on October 21, 1939, and regardless of the fact that the committee, in the exercise of its judgment, may allocate less than what it has previously determined, and even approved, as being necessary to cover the county's public assistance needs, nevertheless, the county may not issue its emergency warrants to meet the amount of the deficit. In other words, the

county can in no way act to alleviate its present condition, but must await the judgment and discretion of the committee and limit itself to the amount finally allocated by that agency, even though the amount be insufficient to meet the county's assistance needs. I do not believe that the public assistance act should be so construed.

The case of *Palmquist v. Taylor, supra,* relied on by the majority, is not applicable to the situation here. In that case, the taxing officers, at the time of making the general levy, included a considerable amount to be used as a special fund which the county *anticipated* would be required for indigent relief during the course of the year; the needs were not immediate but only anticipated. In this case, the needs are not merely anticipated but immediate and emergent.

In my opinion, the county has the power, and should be permitted, to issue its emergency warrants to the extent that the committee's allocation is not sufficient to meet the needs of the county as previously ascertained.

BLAKE, C. J., and ROBINSON, J., concur with STEINERT, J.